## RICHARD A. PORIO *vs.* DEPARTMENT OF REVENUE.

No. 10-P-1073.

Suffolk. April 1, 2011. - August 9, 2011.

Present: WOLOHOJIAN, MILKEY, & HANLON, JJ.

*Anti-Discrimination Law,* Age, Termination of employment, Seniority. *Collateral Estoppel. Civil Service,* Decision of Civil Service Commission, Termination of employment. *Labor,* Civil service. *Governmental Immunity. Statute,* Construction.

In a civil action alleging age discrimination by the defendant public employer in its elimination of the plaintiff civil service employee's position, a Superior Court judge erred in dismissing the plaintiff's disparate treatment claim on the ground of collateral estoppel, where that claim was not precluded by the entry of judgment in an earlier, separate civil action affirming a decision of the Civil Service Commission (commission) in favor of the employer, in that the commission's conclusion in that earlier action regarding the employer's motive was not essential to the commission's decision, and the plaintiff's contention of age discrimination was not then before the commission [60-63]; further, the Superior Court judge erred in dismissing the plaintiff's disparate impact claim on the ground of collateral estoppel, where, in addition to the same reasons for which it was error to dismiss the disparate treatment claim, the propriety of the employer's motives was beside the point in a discrimination claim based on a disparate impact theory [63].

This court concluded that the 1984 amendments to G. L. c. 151B did not operate to restore the Commonwealth's sovereign immunity for the subset of age discrimination claims that are based on a theory of disparate impact, given that the Legislature plainly waived the Commonwealth's sovereign immunity to age discrimination claims, and given the generous reach of G. L. c. 151B, § 4, in providing relief from discrimination in the workplace [63-70].

CIVIL ACTION commenced in the Superior Court Department on February 24, 2005.

A motion to dismiss was heard by *Bonnie H. MacLeod-Mancuso,* J.

*Frank J. Teague* for the plaintiff.

*Howard R. Meshnick,* Assistant Attorney General, for the defendant.

MILKEY, J. The plaintiff, Richard A. Porio, worked as a tax examiner for the Department of Revenue (DOR). In 2002, citing budgetary shortfalls, DOR eliminated Porio's position. Porio filed an appeal with the Civil Service Commission (commission) pursuant to G. L. c. 31, § 43. In that proceeding (civil service appeal), Porio argued that DOR violated G. L. c. 31, § 39, by laying him off while retaining certain other tax examiners who had less seniority. The commission ultimately ruled against him, and its decision was upheld on appeal in an unpublished decision pursuant to our rule 1:28. See *Human Resources Div.* v. *Porio*, 72 Mass. App. Ct. 1110 (2008).

Separately, Porio filed an action pursuant to G. L. c. 151B, § 4(1C), alleging that DOR had discriminated against him because of his age. This claim was based on both disparate treatment and disparate impact theories. A Superior Court judge dismissed the c. 151B action in its entirety on the ground that, in light of the outcome of the civil service appeal, "Porio is . . . collaterally estopped from arguing that the DOR's reason for terminating him was anything other than justified." We disagree, and we additionally reject DOR's argument that it is immune from age-based discrimination claims that are based on disparate impact.

1. *Background.* a. *Porio's appointment and layoff.* In 1985, DOR hired Porio as a clerical employee. Six years later, Porio took and passed the civil service exam for a Tax Examiner I (TE-I) position, the lowest of seven tax examiner classifications used by DOR. In 1998, DOR appointed him to that position, and because he came to that position through having taken the relevant exam, he was classified as a "permanent" employee. See G. L. c. 31, § 1.

On September 6, 2002, DOR notified Porio that it was eliminating all existing TE-I positions (twenty-six in all) because of budgetary problems it was facing. DOR offered him a demotion to a clerical position, which he accepted (with a corresponding reduction in salary).

b. *Civil service appeal.* In his administrative appeal filed pursuant to G. L. c. 31, § 43, Porio focused on the fact that DOR eliminated his position while retaining a large group of tax examiners who had less seniority than he. The tax examiners in

that group held Tax Examiner II (TE-II) positions through provisional promotions (see G. L. c. 31, § 15), not as a result of their having taken civil service exams for the positions. Because these "provisional TE-IIs" "held permanency" only as TE-Is, Porio argued that they had to be considered as TE-Is for purposes of determining which tax examiners should be laid off first pursuant to G. L. c. 31, § 39.[1] On this basis, Porio maintained that DOR was required to lay off these employees before it laid off other TE-Is, including him, who had greater seniority. The commission initially agreed with Porio and ordered DOR to reinstate him. As the commission explained, "[U]nder the circumstances here of existing and further expected departmental budget cuts, the appointing authority had the right to lay off employees but the wrong employees were chosen for layoff."

DOR appealed to the Superior Court pursuant to G. L. c. 30A, § 14. While that appeal was pending, the Supreme Judicial Court issued its ruling in *Andrews* v. *Civil Serv. Commn.*, 446 Mass. 611 (2006). In *Andrews*, the court resolved how provisionally promoted employees should be treated when reductions in force are conducted pursuant to § 39. Specifically, the court stated:

> "Provisional promotion pursuant to G. L. c. 31, § 15, effects a real change from 'one title to the next higher title.' A provisionally promoted employee ceases to be 'in' the original title for purposes of § 39, and does not return to the lower title until the provisional promotion ceases to have effect."

*Id.* at 618. The commission agreed to reconsider its decision in light of *Andrews* and concluded that § 39 did not prevent DOR from laying off Porio before it laid off provisional TE-IIs who had less seniority than he. A Superior Court judge

---

[1] Section 39 of G. L. c. 31, inserted by St. 1978, c. 393, § 11, states in pertinent part:

> "If permanent employees in positions having the same title in a departmental unit are to be separated from such positions because of lack of work or lack of money or abolition of positions, they shall, except as hereinafter provided, be separated from employment according to their seniority in such unit . . . ."

upheld the commission's ruling, and we affirmed. *Human Resources Div.* v. *Porio,* 72 Mass. App. Ct. 1110.

c. *Chapter 151B action.* Porio was fifty-three years old at the time the layoffs occurred. According to his complaint, all but three of the laid-off TE-I employees were over forty at that time, with a mean age of forty-nine and a median age of forty-seven. The complaint further alleged that — in order to perform work that the laid-off TE-I employees previously had done — DOR promoted employees designated as "Management Analysts" to TE-II status, and that these newly-promoted TE-IIs were on average "substantially younger" than the employees they effectively replaced.[2] DOR filed an answer in which it admitted that it had promoted significantly younger workers to TE-II status (the new entry-level tax examiner position) after the TE-I positions were eliminated. Specifically, DOR admitted that the mean and median ages of the terminated employees were fifty and forty-eight, respectively (slightly higher than the complaint alleged), and that the mean and median ages of the newly-promoted TE-II employees were 31.6 and 27.5, respectively.[3] DOR denied that its employment decisions were motivated by age discrimination and instead maintained that its actions were "based upon legitimate, non-discriminatory reasons."

2. *Discussion.* Porio brought his age discrimination claim on two separate theories: disparate treatment and disparate impact.[4]

---

[2]Porio also alleged that DOR committed age discrimination by relying in part on hiring significantly younger "seasonal" TE-I employees to do the work of the laid-off TE-I employees.

[3]Porio alleged that, after the layoffs, DOR promoted twenty-four management analysts to TE-II positions, while DOR admitted that it transferred twelve management analysts into TE-II positions in that time frame (either through promotions or reclassifications).

[4]Count I of Porio's complaint is titled "Disparate Impact of DOR 'Reduction in Work Force,' " while count II is titled "Disparate Treatment." DOR nevertheless argues that count I itself should be treated as a disparate treatment claim, because that count alleges that DOR's rationale for eliminating Porio's position was "pretextual" (proof of which is not required under a disparate impact theory). Although DOR is correct that count I, as pleaded, included some allegations more typically associated with disparate treatment claims, DOR has not argued that Porio failed to include the essential elements of a disparate impact claim in count I. The structure of Porio's complaint leaves little doubt that he intended to rely on both disparate treatment and disparate impact theories.

A disparate treatment case is one in which the employer "purposefully uses" the protected status in making its employment decisions. *School Comm. of Braintree* v. *Massachusetts Commn. Against Discrimination*, 377 Mass. 424, 428 (1979). By contrast, disparate impact cases "involve employment practices that are facially neutral in their treatment of different groups, but that in fact fall more harshly on one group than another." *Id.* at 429. Because the motion judge focused on Porio's disparate treatment theory, we examine that first.

a. *Disparate treatment count.* In his disparate treatment count, Porio alleges in essence that DOR improperly targeted older workers in deciding which positions to eliminate in order to meet its budgetary needs.[5] For purposes of its motion to dismiss, DOR conceded that Porio's complaint set forth a prima facie disparate treatment case. However, DOR argued, and the motion judge agreed, that the civil service appeal conclusively established both that DOR had demonstrated legitimate reasons for eliminating Porio's position and that those reasons were not a pretext. Specifically, the judge ruled that the civil service appeal "resulted in a final judgment that the DOR was justified in terminating Porio, and that it did so for valid and good faith reasons." As set forth below, the judge overstated the preclusive impact of the civil service appeal.

The test for when collateral estoppel lies is well established. A party is precluded from relitigating an issue when:

> "(1) there was a final judgment on the merits in [a] prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue decided in the prior adjudication was essential to the earlier judgment."

---

[5]Porio's complaint is drafted in sufficiently broad terms to allege in addition that DOR faced no budgetary crisis and that the agency's claim of such a crisis was itself a pretext. Compare *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 35 n.3 (2005), quoting from Note, The Prima Facie Case of Age Discrimination in Reduction-In-Force Cases, 94 Mich. L. Rev. 832, 833 n.12 (1995) (referring to some discrimination cases in which the inquiry is focused "on whether a [reduction in force] actually occurred or whether the employer has claimed falsely a [reduction in force] in order to conceal age discrimination"). However, at oral argument, Porio foreswore any reliance on such a theory.

*Green* v. *Brookline*, 53 Mass. App. Ct. 120, 123 (2001). The first two factors are plainly met here, as Porio concedes. The dispute is instead over whether the commission decided that DOR's employment actions were undertaken for legitimate reasons and, if so, whether the commission's resolution of that issue was "essential" to its ruling.

We agree with DOR that the commission appears to have accepted its contention that it eliminated Porio's position as part of a reduction in force that was driven by legitimate budgetary considerations. That is the thrust of the commission's finding that DOR's employment decisions were taken "for austerity reasons," as well as of the commission's conclusion that "under the circumstances here of existing and further expected departmental budget cuts, the appointing authority had the right to lay off employees."[6] However, it does not follow that any such conclusions were "essential" to the commission's ruling. To answer that question, we must closely examine which issues were before the commission.

As noted, the sum and substance of Porio's civil service appeal was that DOR violated G. L. c. 31, § 39, by laying him off while retaining employees in the same job title who had less seniority. The case turned on whether the retained employees should be treated as having the "same title" for purposes of § 39. If so (as Porio argued and the commission initially ruled), then Porio would have prevailed on his § 39 claim regardless of whether DOR had legitimate budgetary reasons for eliminating his position. If, on the other hand, the retained employees should be considered as having a different title for purposes of § 39 (as the commission eventually ruled in light of *Andrews*), then Porio's § 39 claim failed as matter of law. In either event, whether DOR had legitimate budgetary reasons to terminate the TE-I positions was beside the point. Put simply, the civil service appeal was about job titles and seniority rights, not about DOR's motives. Accordingly, to the extent the commission concluded that DOR was animated by legitimate motives, that resolution cannot reasonably be said to have been "essential" to the com-

---

[6]The extent to which Porio pressed that issue in the civil service appeal is not clear on the record before us. We cannot determine whether in that proceeding Porio affirmatively conceded the existence of a budgetary crisis, assumed it arguendo, or failed to counter whatever proof DOR supplied.

mission's decision. Porio is therefore not precluded from relitigating that issue in his age discrimination action.

Moreover, even if the civil service appeal had conclusively established that DOR pursued a reduction in force because of legitimate budgetary considerations, this by itself would not preclude Porio's disparate treatment count. The existence of a legitimate need to reduce the workforce does not resolve which positions should be cut. Here, as in *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 51 (2005), "[t]he question is why, given [DOR's] need to reduce [its] workforce, [it] chose to discharge the older rather than the younger employee[s]." Porio is alleging that DOR responded to its legitimate budgetary constraints in a manner that was driven by an age-based bias against its older employees. That contention was never before the commission, and the resolution of the civil service appeal in DOR's favor therefore could not preclude Porio from raising the issue in his c. 151B claim. Porio's disparate treatment count should not have been dismissed.

b. *Disparate impact count.* In ruling that Porio's complaint should be dismissed on collateral estoppel grounds, the judge did not separately address Porio's disparate impact count. As to this count, DOR's collateral estoppel argument fails not only for the reasons set forth above, but also for the additional reason that whether an employer's actions were driven by improper motives is beside the point in a discrimination claim that is based on a disparate impact theory. See *School Comm. of Braintree* v. *Massachusetts Commn. Against Discrimination*, 377 Mass. at 429, citing *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 227 (1978). Therefore, even had the civil service appeal conclusively established that DOR based its decision entirely on legitimate considerations, this alone would not have barred Porio's disparate impact count.

For the first time on appeal, DOR argues that Porio's disparate impact count fails as matter of law on a wholly separate ground. Specifically, DOR asserts that while the Commonwealth has unquestionably waived its sovereign immunity with respect to age discrimination claims that are based on disparate treatment, it is immune from those age discrimination claims that are based on disparate impact. While ordinarily we would not

address an issue not raised below, we exercise our discretion to do so here. This argument raises an issue of subject matter jurisdiction that is a pure question of law. See *Boxford* v. *Massachusetts Hy. Dept.*, 458 Mass. 596, 600-601 (2010); *Vining* v. *Commonwealth*, 63 Mass. App. Ct. 690, 696 (2005). Moreover, the cases reflect a strong preference for resolving governmental assertions of immunity early in the course of litigation.[7] With these considerations in mind, and with the issue having been briefed by both sides,[8] we turn to the merits of DOR's sovereign immunity argument.

The Legislature enacted G. L. c. 151B in 1946. The key provision in c. 151B is § 4, inserted by St. 1946, c. 368, § 4, which spells out unlawful discriminatory practices by employers and others. Subsection 1 of § 4 renders it unlawful for employers, by themselves or their agents,

> "because of the race [or other specified protected statuses] of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

Although the Legislature has from time to time modified the list of statuses subject to § 4(1)'s protections, it has not otherwise amended the operative language of the subsection in the sixty-five years since its enactment.

"Age" was not included as a protected status when c. 151B was first enacted. However, the Legislature added "age" to § 4(1) (and certain other subsections) four years later. See St. 1950, c. 697, § 6. In 1984, the Legislature removed age discrimination from the ambit of § 4(1), and created two new subsections dedicated to the subject — § 4(1B) and § 4(1C).

---

[7]See *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999), quoting from *Puerto Rico Aqueduct & Sewer Authy.* v. *Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993) (order denying a claim of immunity is immediately appealable because it is "a right that is 'lost as litigation proceeds past motion practice' "). Accord *Boxford* v. *Massachusetts Hy. Dept.*, 458 Mass. at 601.

[8]Initially, Porio did not submit a reply brief responding to DOR's sovereign immunity argument. At oral argument, DOR pressed us to reach this issue, even though the trial court had not yet had the opportunity to address it. After argument, we issued an order requiring Porio to brief the issue, and he did so.

See St. 1984, c. 266, §§ 5, 6.[9] Section 4(1B) applies to age discrimination claims against private employers, while § 4(1C) applies to age discrimination claims against the Commonwealth and its political subdivisions.[10]

The operative language of § 4(1B) is identical to that of § 4(1) (the subsection from which it sprang), save for the addition of a single comma.[11] However, the operative language of § 4(1C) differs from that of § 4(1) and § 4(1B), in a couple of respects. DOR argues that one such difference bespeaks a legislative intent to shield the Commonwealth from claims that are based on a disparate impact theory.[12] Before turning to DOR's specific textual argument, we pause to consider the appropriate lens through which the statutory language is to be viewed.

---

[9]The subject matter of this session law dealt with a host of issues related to age; for example, it amended existing laws concerning compulsory retirement. See St. 1984, c. 266, § 7.

[10]In defining the proscribed employment practices, G. L. c. 151B, § 4(1B), inserted by St. 1984, c. 266, § 6, reads in full as follows:

> "For an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

Section 4(1C), inserted by St. 1984, c. 266, § 6, reads in full as follows:

> "For the commonwealth or any of its political subdivisions, by itself or its agent, because of the age of any individual, to refuse to hire or employ or to bar or discharge from employment such individual in compensation or in terms, conditions or privileges of employment unless pursuant to any other general or special law."

We note in passing that the word "to" appears before "discharge" in § 4(1B), but not in § 4(1C). This difference appears to be of no consequence. Other wording differences are discussed in the text.

[11]The additional comma is between "individual" and "or." Neither party has ascribed any substantive import to the addition of that comma, nor do we.

[12]The other substantive difference in wording has to do with the test for when an otherwise prohibited employment practice is nevertheless allowed. Specifically, § 4(1B), which applies to private employers, allows otherwise prohibited practices if they are "based upon a bona fide occupational qualification," while § 4(1C), which applies to public employers, allows such practices if they are undertaken "pursuant to any other general or special law." We need not explore the import of this difference, because it is not at issue in this case.

DOR asks us to scrutinize the language of § 4(1C) to evaluate whether we can confidently say that — through the 1984 enactment of that language — the Legislature expressly waived the Commonwealth's sovereign immunity as to age-based disparate impact claims, or that such waiver is necessarily implied. For that proposition, DOR relies on the principle expressed in cases such as *Ware* v. *Commonwealth*, 409 Mass. 89, 91 (1991), that "[c]onsent to suit must be expressed by the terms of the statute, or appear by necessary implication from them."[13] In this manner, DOR suggests that any ambiguity in § 4(1C) must be read in its favor. Given the particular historical context in which the 1984 amendments arose, we disagree.

It is beyond dispute that the Commonwealth has generally waived its sovereign immunity pursuant to G. L. c. 151B. See *Bain* v. *Springfield*, 424 Mass. 758, 763 (1997), citing G. L. c. 151B, § 1(1) and (5) ("There is no doubt that the antidiscrimination statute, G. L. c. 151B, . . . waives the sovereign immunity of the 'Commonwealth and all political subdivisions . . . thereof' by including them in the statutory definition of persons and employers subject to the statute"). Moreover, the Supreme Judicial Court has recognized since 1979 that disparate impact claims can be brought under G. L. c. 151B, § 4(1) (the subsection that governed age discrimination claims prior to the 1984 amendments). See *School Comm. of Braintree*, 377 Mass. at 429 n.10, quoting from *Griggs* v. *Duke Power Co.*, 401 U.S. 424, 431 (1971) (recognizing that c. 151B, § 4, like Federal law, "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation"). Thus, prior to 1984, the Commonwealth plainly would have been subject to age-based discrimination claims, regardless of whether they were based on disparate treatment or disparate impact theories. The question before us, then, is not whether, by

_____

[13]In the context of examining Congressional abrogation of State sovereign immunity, the United States Supreme Court has referred to such an interpretative principle as a "clear statement rule." See, e.g., *Apkin* v. *Treasurer & Recr. Gen.*, 401 Mass. 427, 433 (1988) ("The Supreme Court has expressly adopted a clear statement rule"), citing *Atascadero State Hosp.* v. *Scanlon*, 473 U.S. 234, 242 (1985) ("Congress may abrogate the States' constitutionally secured immunity from suit in [F]ederal court only by making its intention unmistakably clear in the language of the statute").

enacting § 4(1C) in 1984, the Legislature intended to waive the Commonwealth's sovereign immunity as an original matter. Rather, the question is whether the 1984 amendments affirmatively were intended to restore immunity that the Legislature already had waived. "In this context, we believe that the rule recognized in *Ware*, 409 Mass. at 91, requiring a clear statement of legislative intent, at a minimum has less force."[14] We are also mindful of the legislative command appearing elsewhere in c. 151B, that "[t]his chapter shall be construed liberally for the accomplishment of its purposes." G. L. c. 151B, § 9, as amended by St. 2002, c. 223, § 2.

We turn then to examining the particular difference in wording between § 4(1B) and § 4(1C) on which DOR focuses. Both subsections generally prohibit employers from making certain employment decisions "because of the age of" the affected individual. DOR argues that such language supports only a disparate treatment theory, on the ground that an employer can take action "because of" someone's age only through making conscious decisions related to his or her age. According to DOR, there is no other language in § 4(1C) that could support a disparate impact theory. In contrast, § 4(1B) includes additional language prohibiting employers from "discriminat[ing] against" the affected individuals in certain respects, and DOR argues that it is this language, and only this language, that "arguably could be construed to authorize liability under a disparate impact theory."[15] Because such language is not included in § 4(1C), DOR argues that the Legislature did not intend to allow age discrimination suits against the Commonwealth and its subdivisions based on a disparate impact theory.

As an initial matter, we note that there is at least some doubt whether the omission of the relevant language was actually

[14]Compare *Loeffler* v. *Frank*, 486 U.S. 549, 561 (1988) ("when Congress intends the waiver of sovereign immunity in a new cause of action directed against [F]ederal entities to be [the] exclusive [remedy], — in effect, to limit the force of 'sue-and-be-sued' clauses [previously in effect] — it has said so expressly"); *Berlin* v. *State*, 124 N.H. 627, 631 (1984) (where the question is whether a statute repealed a waiver of sovereign immunity, legislative intent to do so must be clear).

[15]DOR appears to be suggesting that facially neutral employment practices might still be said to "discriminate against" persons based on age even if such practices were not undertaken "because of" age.

intended, or whether it was instead the result of a "scrivener's error." That is because of the particulars of how the Legislature modified the operative language it borrowed from § 4(1) when it created § 4(1C) in 1984. At that time, § 4(1) included (and, together with § 4[1B], still includes) the phrase, *"or to discriminate against such individual* in compensation or in terms, conditions or privileges of employment" (emphasis supplied). In selecting the text of § 4(1C), the Legislature omitted the first six words of that phrase (italicized above), while keeping the remainder. As a result of this partial "edit," the syntax of § 4(1C) is nonsensical (referring as it does to an employer "discharg[ing] from employment such individual in compensation or in terms, conditions or privileges of employment . . ."). There are two possible explanations for this result: either the Legislature inadvertently omitted the first six words, or it inadvertently kept the remainder. The first explanation is at least as plausible as the second.[16]

In any event, we conclude that while DOR's textual arguments are not without some force,[17] they ultimately place undue weight on the difference in language between § 4(1B) and § 4(1C). When the Supreme Judicial Court first recognized that one could base a c. 151B claim on a disparate impact theory, the court did not tether that conclusion to any particular language in the statute.[18] See the 1979 decision in *School Comm. of Braintree* v. *Massachusetts Commn. Against Discrimination*, 377 Mass. at 428-429. Moreover, the court spoke of disparate

---

[16]The parties have not identified any legislative history that sheds any light on the issue, nor have we.

[17]For example, we note that, in concluding that similar language did not support disparate impact claims under the Age Discrimination in Employment Act of 1967 (ADEA), Justice O'Connor stated her view that the statute required discriminatory intent, "for to take an action against an individual *'because of* such individual's age' [as provided for in the ADEA] is to do so 'by reason of' or 'on account of' her age." *Smith* v. *City of Jackson*, 544 U.S. 228, 249 (2005) (O'Connor, J., concurring in the judgment).

[18]That approach is consistent with the approach that the United States Supreme Court took when it first recognized that disparate impact claims could be brought pursuant to Title VII of the Civil Rights Act of 1964. See *Smith* v. *City of Jackson*, 544 U.S. at 235 (discussing *Griggs* v. *Duke Power Co.*, 401 U.S. 424 [1971], and pointing out that the Court did not identify statutory text to support disparate impact claims until its 1988 decision in *Watson* v. *Fort Worth Bank & Trust*, 487 U.S. 977, 991 [1988]).

treatment and disparate impact as "two manners" of demonstrating a discrimination claim, not as distinct causes of action. *Id.* at 428. Consistent with that treatment, the court referred to "all cases of employment discrimination," including those based on disparate impact, as focusing on "whether the employer penalizes some employees or prospective employees *because of* their [protected status]" (emphasis added). *Ibid.* Thus, DOR's insistence that we read fine distinctions between claims that are based on actions taken "because of" a protected status and claims that are based on "discriminat[ion]" related to that status, lies in great tension with the broad-brush approach that the Supreme Judicial Court applied to the statute shortly before § 4(1C) was enacted in 1984.[19] Stated differently, given what the Supreme Judicial Court had said about disparate impact cases at the time, had the Legislature intended to restore the Commonwealth's sovereign immunity for those age discrimination cases that were brought on a disparate impact theory, one would have expected it to employ a less obscure approach to doing so. Notably, the Legislature has demonstrated its ability to state its intent to preserve sovereign immunity where that issue may be in doubt. See, e.g., G. L. c. 21E, § 2(*a*)(11) ("nothing in this definition or in this chapter shall be construed to waive any immunity that public employers or public employees may have pursuant to chapter two hundred fifty-eight").[20] Compare *Smith* v. *City of Jackson*, 544 U.S. 228, 239 n.11 (2005) (concluding that the ADEA provided for disparate impact claims, and noting that "if Congress intended to prohibit all [age-based] disparate impact claims, it certainly could have done so").

In sum, where the Legislature plainly waived the Commonwealth's sovereign immunity to age discrimination claims, and given the generous reach of G. L. c. 151B, § 4, in providing relief from discrimination in the workplace, we conclude that the 1984 amendments to the statute did not operate to restore

---

[19]The Legislature is presumed to be aware of the Supreme Judicial Court's decisions. See *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 323 (1992).

[20]The quoted text was inserted by St. 1992, c. 133, § 274, and first appeared in G. L. c. 21E, § 2(*a*)(9).

sovereign immunity for the subset of age discrimination claims that are based on a theory of disparate impact.

3. *Conclusion.* For the reasons set forth above, we conclude that the judgment must be reversed.

*So ordered.*