CHUKWUDERA B. OKOLI *vs.* BLESSING N. OKOLI
& another[1] (No. 2).

No. 10-P-2039.

Suffolk. September 13, 2011. - March 6, 2012.

Present: MILLS, SMITH, & WOLOHOJIAN, JJ.

*In Vitro Fertilization. Consent. Contract,* Performance and breach, Duress.
*Duress. Fraud. Conspiracy. Collateral Estoppel. Practice, Civil,* Motion to
dismiss, Pendency of prior action. *Limitations, Statute of.*

In a civil action brought in Superior Court by the husband against the wife
and a clinic specializing in in vitro fertilization, the judge properly dismissed
claims against the wife for breach of an agreement regarding her artificial
insemination, where a prior action for divorce was pending in the Probate
and Family Court, and the husband raised the same factual allegations in
the instant action as he did in the divorce action [385-386]; further, although
principles of collateral estoppel did not bar claims against the wife alleging
duress, fraud and deceit, and conspiracy to defraud with regard to her
behavior in obtaining the husband's consent to her artificial insemination
[386-387], or alleging intentional infliction of emotional distress [387-388],
dismissal of the claim that the wife obtained the husband's consent through
duress was proper, where the husband failed to allege any wrongful act by
the wife [388-389]; similarly, dismissal of the claim that the wife conspired
with the clinic to defraud was proper, where the husband failed to allege a
common tortious plan [392]; likewise, dismissal of the claim of intentional
infliction of emotional distress was proper, where the husband failed to al-
lege conduct that was extreme and outrageous as a matter of law [389-390];
on the other hand, the judge erred in dismissing the husband's claim
against the wife for fraudulent inducement, where the husband alleged a
misrepresentation of a material fact (i.e., the wife's failure to disclose the
full contents of the consent form), a claim that was distinct from the
analysis in the divorce action relating to the husband's consent to the in
vitro fertilization procedure [390-391].
In a civil action brought in Superior Court by the husband against the wife
and a clinic specializing in in vitro fertilization, the judge properly dismissed
claims against the clinic for fraud and conspiracy to defraud, where the
husband filed his complaint well beyond the three-year time limit appli-
cable to such actions [386]; further, although principles of collateral estop-
pel based on the pendency of a divorce action in the Probate and Family
Court did not bar a claim of breach of contract against the clinic [386],
dismissal of the claim was proper, where there was no actual or implied
contract between the husband and the clinic [391].

[1]Boston IVF, Inc.

CIVIL ACTION commenced in the Superior Court Department on October 29, 2008.

Motions to dismiss were heard by *Geraldine S. Hines*, J.

*Dana Alan Curhan* for Chukwudera B. Okoli.

*Collins L. Akukwe* for Blessing N. Okoli.

*Kevin C. Reidy* for Boston IVF, Inc.

MILLS, J. The plaintiff, Chukwudera Okoli (husband), challenges the dismissal of his Superior Court complaint in which he raised several contract and tort claims against defendants Blessing Okoli (wife) and Boston IVF, Inc. (Boston IVF). The judge dismissed the entire complaint on the basis of collateral estoppel. As to claims I through IV, and VI through VIII, we affirm on different grounds. We reverse as to claim V and remand for further proceedings.

*Facts.* This case is related to the divorce of the husband and wife and an order by a judge of the Probate and Family Court for support of minor children. See *Okoli* v. *Okoli (No. 1)*, *ante* 371 (2012). In the present complaint, the husband alleged the following well-pleaded facts, which for purposes of motions under Mass.R.Civ.P. 12(b), 365 Mass. 754 (1974), are to be taken as true. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 625 n.7 (2008); *Flomenbaum* v. *Commonwealth*, 451 Mass. 740, 742 (2008).

The parties were married on October 4, 1991, but separated in November, 2000, intending to divorce in the future. Prior to separation, they unsuccessfully attempted to have children through in vitro fertilization (IVF). The wife still desired to have children after the separation, and sometime in 2001, she contacted Boston IVF to pursue another attempt at IVF. Boston IVF required the consent of both the husband and the wife to the procedure. The husband initially refused to consent but ultimately relented when the wife threatened to withdraw her support for his United States visa application.[2]

---

[2]The nature of this application is a continuing source of confusion, as during the divorce case the parties referred to this as a " 'green card' application." The probate judge ultimately found that the husband already had a green card, and that the wife, who by that point was a naturalized citizen, was supporting the husband's citizenship application. Since the nature of the application is not material to this decision, we will continue to use the term "visa application" utilized by the husband in his complaint.

The parties executed an agreement on December 14, 2001 (2001 agreement), which stated in relevant part:

> "That [husband] hereby gives his consent for [wife's] fertility treatment[,] [e]mbryo freezing and disposition of eggs, sperm and embryo[.]
>
> "That [husband] will recognize any offspring from this exercise as previously and mutually agreed to by both parties.
>
> "That since the financial assets of the family [have] been shared, [husband] does not have any financial obligations with regards to the above exercise and [its] results[.]
>
> "That [wife] will not at any time ask or sue for any other financial obligation regarding the above exercise and [its] results."

Boston IVF was aware of this agreement. The husband subsequently signed a new consent form each time the wife underwent an IVF procedure, from December, 2001, through November, 2002. Initially, the husband noted on each form, next to his signature, that his consent was limited by the 2001 agreement.

At some point, the wife told the husband that Boston IVF would not accept his consent forms with these annotations and that he must sign the forms without any written limitations. She assured him that she would never seek child support, and the husband ultimately signed a final consent form on November 13, 2002, without any limiting language. He signed that form in a parking lot, not in the offices of Boston IVF, and in fact never communicated with Boston IVF when signing any of the forms. He only saw the last page of the final consent form, and he did not read the entire document.

The IVF procedure following the signing of the November 13, 2002, consent form was successful, and twins were born on May 12, 2003. The wife sought child support in Probate and Family Court on September 28, 2006. The husband subsequently learned that the wife had withdrawn her support for his visa application in April, 2002, without informing him.

*Procedural background.* The divorce case was tried between

July 22, 2008, and March 12, 2009. While that trial was under-way, on October 29, 2008, the husband filed the present action in Superior Court, alleging eight causes of action. Claim I al-leges breach of contract against the wife based on her promise in the 2001 agreement that the husband would not be responsible for any financial obligation to the children. Claim II alleges breach of contract against the wife based on her promise in the 2001 agreement not to sue the husband for child support. Claim III alleges duress against the wife in connection with the husband's execution of the consent forms, based on the wife's threat to withdraw support for his visa application. Claim IV al-leges intentional infliction of emotional distress against the wife based on her conduct in obtaining the husband's signatures on the consent forms. Claim V alleges fraud and deceit against the wife based on her utilization of the consent forms when the husband had not read the full form, and based on allegations that she forged one of the forms. Claim VI alleges breach of contract against Boston IVF based on its acceptance of the husband's consent, despite having had no personal contact with him. Claim VII alleges fraud and deceit against Boston IVF based on its acceptance of the final consent form without an-notations, despite knowing that the husband had previously provided consent only subject to the annotations. Claim VIII alleges conspiracy to defraud against both defendants based on their collective behavior in obtaining the husband's consent to the procedure.

In August, 2009, the Probate and Family Court judge ruled, inter alia, that the husband was the legal father of the twins and thus was required to pay child support. On November 19, 2009, the judge in the present case, as noted above, granted motions to dismiss brought on behalf of both defendants. The judge ruled that the present complaint was merely a collateral attack on the Probate and Family Court judgment, and that all claims were barred by collateral estoppel. The husband appeals.

*Discussion.* "We review the grant of a motion to dismiss de novo . . . ." *Housman* v. *LBM Financial, LLC,* 80 Mass. App. Ct. 213, 216 (2011). Here, we affirm the dismissal of claims I through IV and VI through VIII, though for slightly different reasons than those of the judge below. See *Commonwealth* v. *Levesque,* 436 Mass. 443, 455 (2002), quoting from *Gabbidon*

v. *King*, 414 Mass. 685, 686 (1993) ("[O]n appeal [an appellate court] may consider any ground apparent on the record that supports the result reached in the lower court"). We think Mass. R.Civ.P. 12(b)(6) and Mass.R.Civ.P. 12(b)(9), as amended, 450 Mass. 1403 (2008), offer a more direct path to dismissal of the complaint than the doctrine of collateral estoppel. We reverse as to claim V, however, because collateral estoppel does not apply, and the claim cannot be dismissed under rule 12(b).

Collateral estoppel precludes a party from relitigating an issue when four factors are present:

> "(1) there was a final judgment on the merits in [a] prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue decided in the prior adjudication was essential to the earlier judgment."

*Porio* v. *Department of Rev.*, 80 Mass. App. Ct. 57, 61 (2011), quoting from *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 123 (2001). The trial judge did not engage in this four-part evaluation when dismissing the complaint. We will evaluate the claims under rules 12(b)(9) and 12(b)(6) before reaching the collateral estoppel argument.

1. *Rule 12(b)(9).* Claims I and II must be dismissed pursuant to Mass.R.Civ.P. 12(b)(9), due to the "[p]endency of a prior action in a court of the Commonwealth." "Rule 12(b)(9) provides for the dismissal of a second action in which the parties and the issues are the same as those in a prior action still pending in a court of this Commonwealth." *M.J. Flaherty Co.* v. *United States Fid. & Guar. Co.*, 61 Mass. App. Ct. 337, 339 (2004). The divorce case remains "pending" as long as a viable appeal exists. See *Massachusetts Bread Co.* v. *Brice*, 13 Mass. App. Ct. 1053, 1054 (1982); *Keen* v. *Western New England College*, 23 Mass. App. Ct. 84, 85 n.2 (1986).[3]

---

[3]Our opinion in the divorce case is released in conjunction with this opinion, see *Okoli* v. *Okoli (No. 1), ante* 371 (2012); parties have twenty days after the date of rescript to file an application for leave to obtain further appellate review. Mass.R.A.P. 27.1(a), as amended, 367 Mass. 922 (1975).

The wife, as the defendant in claims I and II, was a party to the divorce case. Claims I and II address the enforceability of the 2001 agreement regarding child support. The husband raises the same factual allegations here as he did in the divorce case.[4] Further, the husband's only claimed damages are the child support payments themselves, which were entirely addressed in the divorce case. Therefore, claims I and II can be properly dismissed under rule 12(b)(9).

2. *Statute of limitations.* Claims VII and VIII (against Boston IVF)[5] are properly dismissed under rule 12(b)(6) based on the statute of limitations. Tort actions must be commenced within three years after the cause of action accrues. G. L. c. 260, § 2A. Claims VII and VIII (Boston IVF) are tort claims — respectively, fraud and conspiracy to defraud. The husband's causes of action accrued upon Boston IVF's acceptance of his final consent form on November 13, 2002. He filed his complaint on October 29, 2008, well beyond the three-year time limit. Therefore, claims VII and VIII (Boston IVF) can be properly dismissed under rule 12(b)(6) based on the statute of limitations.[6]

3. *Collateral estoppel.* Claims III, IV, V, VI, and VIII (wife) are not barred by collateral estoppel. Claim VI is not barred by collateral estoppel or rule 12(b)(9) because Boston IVF was not a party to the divorce case. See *Porio* v. *Department of Rev.*, 80 Mass. App. Ct. at 61. Claims III, IV, V, and VIII against the

---

[4]See *Okoli* v *Okoli (No. 1)*, *supra.*

[5]Claim VIII names both defendants. We analyze the claim independently against each defendant, and we specify the particular defendant in a parenthetical when discussing claim VIII.

[6]Claims III, IV, V, and VIII (wife), all tort claims against the wife, would also be barred by the statute of limitations. However, she failed to raise this argument in her motion to dismiss. The statute of limitations must be raised by a party to provide grounds for dismissal. See *Gallagher* v. *Wheeler*, 292 Mass. 547, 550 (1935). See also *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 108 (1977) (statute of limitations claim not properly on appeal where argument not presented to trial judge). Although the wife generally argued that rule 12(b)(6) provided grounds for dismissal, her argument did not specifically mention the statute of limitations. *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 56 n.5 (1982), quoting from Mass.R.Civ.P. 12(b)(6) ("A bare allegation . . . that the complaint fails to state a claim upon which relief can be granted . . . would not be sufficient to preserve a claim . . . . The rules require that such an allegation 'include a short, concise statement of the grounds on which such defense is based' "). Therefore, the statute of limitations does not preclude claims III, IV, V, and VIII (wife).

wife are not barred by collateral estoppel because the third and fourth factors of the test set forth in *Porio* require that "the issue in the prior adjudication [be] identical to the issue in the current litigation; and . . . the issue decided in the prior adjudication [be] essential to the earlier judgment." *Ibid.*, quoting from *Green* v. *Brookline, supra.* The claims against the wife fail to meet one or both of these requirements.

Claims III, V, and VIII (wife) address the husband's claims of duress and fraud related to his signature on the consent form. In the divorce case, the judge found these arguments "wasteful" and did not consider them. In our decision in that case, we concluded these arguments were waived due to improper briefing. *Okoli* v. *Okoli (No. 1), supra* at 378-379. Thus, the issues underlying these claims were not "essential to the earlier judgment," and collateral estoppel does not apply. *Porio* v. *Department of Rev., supra.*[7]

Claim IV alleges intentional infliction of emotional distress, and the factual proof required for that claim is inherently different from the claims at issue in the divorce case.[8] The probate judge addressed only whether the husband gave consent sufficient to establish parental responsibilities, but the judge had no reason to consider the tort claim. Further, the husband asserts damages in claim IV independent from his child support

---

[7]Claim III would likely be barred by claim preclusion, but this defense must be raised in a defendant's answer or motion to dismiss. See *Carpenter* v. *Carpenter*, 73 Mass. App. Ct. 732, 738 (2009). The wife failed to raise claim preclusion in her motion to dismiss, so claim III cannot be dismissed on this basis.

[8]To allege a case of intentional infliction of emotional distress,

> "it is necessary '(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of [the] conduct, . . . (2) that the conduct was "extreme and outrageous," was beyond all possible bounds of decency and was "utterly intolerable in a civilized community," . . . (3) that the actions of the defendant were the cause of the plaintiff's distress, . . . and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable [person] could be expected to endure it." ' "

*Conway* v. *Smerling*, 37 Mass. App. Ct. 1, 8 (1994), quoting from *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976). Outrageous conduct means "a high order of reckless ruthlessness or deliberate malevolence that . . . is simply intolerable." *Ibid.*

obligations, and he would not have been able to seek those damages in Probate and Family Court. As a result, the issue whether the wife's actions were extreme and outrageous is not identical to an issue determined in the divorce case, and the issue was not essential to any judgment in that case. Therefore, collateral estoppel cannot serve as a basis for dismissal of claim IV.

4. *Rule 12(b)(6).* To survive a rule 12(b)(6) motion to dismiss, a complaint must make "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Iannacchino* v. *Ford Motor Co.*, 451 Mass. at 636, quoting from *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true . . . ." *Ibid.*, quoting from *Bell Atl. Corp.* v. *Twombly*, *supra* at 555. Claims III, IV, VI, and VIII (wife) can be dismissed under rule 12(b)(6), but claim V cannot, and it must therefore be remanded for further proceedings.

a. *Claim III.* The husband claims that the wife procured his signature on the consent form under duress, and he therefore suffered damages. Because he has not alleged any physical or violent compulsion, the husband must make his claim under a theory of economic duress. See *Cabot Corp.* v. *AVX Corp.*, 448 Mass. 629, 637 (2007). Demonstrating economic duress requires "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Id.* at 637-638, quoting from *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.*, 8 Mass. App. Ct. 340, 342 (1979). To demonstrate coercive acts, "the assertion of duress must be proved by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities." *Id.* at 638, quoting from *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.*, *supra.*

The husband fails to state a claim of duress under rule 12(b)(6) because he has not alleged any wrongful act by his wife. His wife's threat to remove her support for his visa application is the coercive act alleged, but as matter of law, this action cannot

be considered wrongful. The wife had no duty to support the husband's visa application, and to the extent that he bargained for her support, his actions were illegal together with hers. See 8 U.S.C. § 1186A(b)(1)(B) (2006) (United States Attorney General may reverse immigration decision if fee or other consideration offered in exchange for spousal petition of support). Further, unequal bargaining power alone is not a valid basis for duress. *Cabot Corp.* v. *AVX Corp.*, *supra* at 638-639. The wife did not create the situation where the husband needed her support for his visa application; she merely took advantage of the existing situation. Such actions are not wrongful and cannot form the basis for a duress claim. *Ibid.* Thus, the husband has failed to state a claim upon which relief can be granted, and claim III must be dismissed.

b. *Claim IV.* Given the standard for intentional infliction of emotional distress, see note 8, *supra*, the husband has not sufficiently pleaded this claim to survive a rule 12(b)(6) motion. He has alleged that the wife threatened to remove her support for his visa application, threatened him with deportation, and repeatedly pressured him to sign the consent forms against his will. These allegations cannot support a finding that the wife's conduct was extreme and outrageous as matter of law.

We focus our analysis on the second prong of the applicable standard: whether "the conduct was extreme and outrageous." *Conway* v. *Smerling*, 37 Mass. App. Ct. 1, 8 (1994), quoting from *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 145 (1976). Many human behaviors, especially in something as frequently fraught with ill feelings and hurt as divorce, are, at best, sad and regrettable, but that does not make them grounds for legal recourse. What is required is "a high order of reckless ruthlessness or deliberate malevolence" resulting in "profoundly shocking conduct." *Ibid.* Even in matters where human feelings and decency might counsel restraint, the law does not impose legal sanctions on behavior that does not fall to the depths necessary for court action. "Out of the human condition may arise a myriad of emotional responses including anger, sadness, anxiety, and distress, many of which are attributable to the conduct of others. While perhaps blameworthy, such conduct is often not legally compensable." *Quinn* v. *Walsh*, 49 Mass. App. Ct. 696, 706 (2000).

An examination of Massachusetts cases leads us to conclude that courts have generally looked to the social context of the facts of the case to determine the necessary degree of wrong-doing for an action to be "extreme and outrageous" within the meaning of the test set forth in *Conway* v. *Smerling, supra.* Courts have shown a greater willingness to intercede in issues involving arm's-length contractual relations or extreme or outrageous behavior by relative strangers than in the emotionally-charged environs of intrafamilial conflicts. Compare *Boyle* v. *Wenk*, 378 Mass. 592, 593-595 (1979) (conduct of private investigator repeatedly harassing and intimidating woman just released from hospital with newborn was extreme and outrageous); *Simon* v. *Solomon*, 385 Mass. 91, 96-97 (1982) (land-lord's conduct showing continuing pattern of indifference to repeated flooding of tenant's apartment with raw sewage was extreme and outrageous); *Tech Plus, Inc.* v. *Ansel*, 59 Mass. App. Ct. 12, 26 (2003) (deliberately spreading false claim to potential clients and business partners that person is anti-Semitic and persecutes others based on their religion presented valid claim of extreme and outrageous conduct), with *Ziemba* v. *Fo'cs'le', Inc.*, 19 Mass. App. Ct. 484, 489-490 (1985) (being arrested along with wife and young son and removed from bar at instigation of former girlfriend currently working as waitress not sufficiently extreme and outrageous); *Quinn* v. *Walsh*, 49 Mass. App. Ct. at 706-708 (deliberately conducting affair with another's wife in such a way as to make it public knowledge in community to humiliate him not sufficiently extreme and outrageous); *Conley* v. *Romeri*, 60 Mass. App. Ct. 799, 803-805 (2004) (man with vasectomy inducing woman to enter into protracted relationship in reliance on prospect of having children not sufficiently extreme and outrageous conduct).

The husband and wife were involved in a prolonged and difficult divorce process. While the wife could withdraw her support of the husband's citizenship application (and ultimately did), she had no power to effect his deportation. We conclude that the wife's actions as alleged fall short of the level of shocking malevolence required, and claim IV must be dismissed under rule 12(b)(6).

c. *Claim V.* The husband's fraud allegation against the wife is

sufficient to survive the motion to dismiss under rule 12(b)(6). He has essentially alleged a theory of fraudulent inducement, which requires evidence of "misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying." *Commerce Bank & Trust* v. *Hayeck*, 46 Mass. App. Ct. 687, 692 (1999), quoting from *Hogan* v. *Riemer*, 35 Mass. App. Ct. 360, 365 (1993). Here, the husband has essentially alleged that the wife's failure to disclose the full contents of the consent form was a misrepresentation of a material fact, made to induce his signature, and that he relied on that misrepresentation to his detriment.

This claim is also distinct from the analysis of the husband's consent to the IVF procedure in the parties' divorce case. There we explained that the husband's knowledge that his signature would create a child was enough to meet the consent requirements under the artificial insemination statute, G. L. c. 46, § 4B, making him the father of the children. See *Okoli* v. *Okoli (No. 1), supra* at 374-377. The fraud claim here examines his actions just before signing, and he alleges that he would not have agreed to sign (and accept the resulting parental responsibilities) absent his wife's fraud. This is a distinct claim that must be evaluated on remand.

We do note, however, that the husband cannot claim his child support payments as damages, as that would be a collateral attack on the decision of the Probate and Family Court judge. If he seeks to modify his child support payments, he must do so in the Probate and Family Court, not through this Superior Court action. The fraud claim in this case can only continue to the extent the husband can allege damages independent of his child support obligations.

d. *Claim VI.* Claim VI, alleging breach of contract against Boston IVF, can be dismissed under rule 12(b)(6). The husband's complaint alleges that he had no contact with Boston IVF regarding the consent forms. Crucially, there was no exchange of consideration or services between the husband and Boston IVF. Indeed, his signature was merely an ancillary condition imposed by Boston IVF to effect the contract between Boston IVF and the wife. Therefore there is no actual or implied contract between the husband and Boston IVF, and he has no basis to claim a breach of any such putative agreement.

e. *Claim VIII (wife)*. Claim VIII (wife) can also be dismissed under rule 12(b)(6). A claim of conspiracy to defraud requires evidence that each party provided "substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." *Kurker* v. *Hill*, 44 Mass. App. Ct. 184, 189 (1998). The husband has alleged that both the wife and Boston IVF knew his signature was obtained fraudulently, but this allegation falls far short of alleging a common tortious plan with the goal of committing fraud against the husband. *Ibid.* Thus claim VIII (wife) must be dismissed under rule 12(b)(6).

*Conclusion.* That portion of the judgment entered on the wife's motion to dismiss, dismissing claim V of the complaint, is vacated, and the matter is remanded for further proceedings consistent with this opinion. That judgment is otherwise affirmed.

The judgment entered on Boston IVF's motion to dismiss is affirmed. Boston IVF's request for attorney's fees and costs under Mass.R.A.P. 25, 365 Mass. 771 (1974), is denied.

*So ordered.*