The former husband, Patrick Christopher (husband), appeals from a judgment of divorce issued by a judge of the Probate and Family Court ordering him to pay to the former wife, Deborah Contino (wife), weekly alimony in an amount based on income attributed to him. He claims the judge erred by (1) misapplying the proper standard in attributing income; (2) awarding alimony to the wife which exceeds statutory limits; and (3) failing to attribute income to the wife and not including her cohabitation as a reason for terminating alimony. The husband also argues that a different probate judge abused his discretion in allowing the wife's motion to dismiss the husband's complaint for modification, and in declining to grant a motion to stay the enforcement of certain portions of the judgment related to alimony. Because (a) the trial judge attributed income to the husband in accordance with an earlier version of the Massachusetts Child Support Guidelines (guidelines) rather than the version newly in effect at the time the judgment issued, and (b) the judge omitted from her findings and rationale critical considerations mandated by the newer guidelines, we vacate the portion of the judgment relating to the calculation of the alimony award using income attributed to the husband. The remainder of the judgment is affirmed. We also affirm the judgment dismissing the complaint for modification and the order denying the motion to stay.
Background. The parties were married in August, 1990, and the husband's complaint for divorce was served on the wife in May, 2015. There were two children born of the marriage. During the early years of the marriage, the couple lived in New Jersey, where the wife was employed as an elementary and middle school teacher, then later as a guidance counsellor, in the public school system. The husband earned a bachelor of science degree from a maritime college in New York, and began working in the scrap metal recycling industry. In 2005, the parties moved to Massachusetts from New Jersey after the husband secured a position as the regional director with Schnitzer Steel Industries, Inc. (Schnitzer).[3] By March, 2012, the husband was the president of Schnitzer, earning a base salary of $ 550,000, with additional annual and long-term incentives totaling more than $ 500,000 related to cost reduction measures.
In September, 2013, the husband left Schnitzer and became a consultant for American Iron and Metal (AIM) in Montreal, Canada. After receiving a Canadian work visa, the husband became a full-time employee at AIM in the Canada office, where he earned a base salary of $ 1 million, received a one-time $ 750,000 signing bonus, and had the potential to earn additional bonus compensation based on his achievement of certain goals within the company.[4] As a perquisite of his employment, the husband had access to AIM's private aircraft, which he used to travel home to Massachusetts on weekends. According to the husband, while at AIM he made numerous positive changes to the company's structure, revamped the technology department, and created a financial department.[5] The owner of AIM, Herbert Black, considered the husband his "heir apparent." Black agreed that when the husband first arrived at AIM, he performed well and had some innovative ideas for running the business. However, after the husband's first six months at AIM, Black's opinion of him changed. In February, 2015, Black terminated the husband from his position at AIM.
Sometime after his termination, the husband began what he considered a diligent job search. He personally reached out to friends and acquaintances in the scrap metal recycling industry rather than sending out resumes, because, according to him, the industry was small and he already knew the potential employers from whom he was seeking employment.[6] ,[7] He also contacted a job recruitment firm. In May, 2015, the husband claimed he was actively interviewing and, despite having no offers, told the wife that he had several possible opportunities for employment. He testified that he put off accepting a position with Excel Recycling (Excel) because a potential opportunity at another company, Sims Metal Management (Sims), offered a bigger position with more compensation. After the husband had four meetings with Sims, the job was given to another individual.[8]
On May 1, 2015, the husband filed a complaint for divorce seeking joint legal custody of the two minor children, an equitable division of the marital estate, and conveyance of the marital home. The wife counterclaimed, requesting custody of the parties' son, support for her and the children, health insurance, conveyance of the marital home, and an equitable division of the marital assets and debts.
In July, 2015, the wife filed a motion to compel the husband to obtain employment. A few weeks later, the husband accepted an offer from Excel in Massachusetts, as vice president of operations, the only offer he claimed was available to him at that time. He earned an annual base salary of $ 150,000, with potential for additional bonus, incentive, and commission compensation. Around this same time, the husband partnered with a friend to form Coastal Recycling, LLC (Coastal). Although he invested time and money into launching Coastal, it was not a viable business at the time of trial. The husband insisted that he attempted "every other week" to find better paying employment, but the judge determined that most of the husband's search efforts were comprised of his attempts to raise venture capital for Coastal, rather than obtaining new, higher paying employment.
Following a four-day trial, the judge issued both findings of fact and a judgment dated October 10, 2017. The judge found that "there was and is an availability of employment at [h]usband's attributed income level," and that the husband's employment attained at Excel was not "commensurate with his training and education." The husband's skills, the judge further found, "are highly transferable to other companies in need of similar services," but he had failed to obtain a better or higher paying job. In addition, the judge did not credit the husband's testimony that there were no other jobs available to him apart from smaller companies paying a lower salary.[9] The husband had "failed to reasonably search for better employment, and as a result, he [wa]s earning less than he could through reasonable efforts." The judge concluded that the husband "did not perform a reasonable job search prior to obtaining employment at Excel." The judge determined that turning down job offers, failing to send out resumes to potential employers, and vacationing in St. Marten and Hawaii during his unemployment "did not constitute a reasonable job search."
Ultimately, as relevant here, the judge attributed annual income to the husband of $ 1,180,260 ($ 22,697 weekly) based on the husband's average income earned between 2005 and 2014. She declined to attribute income to the wife, finding that her twelve-year absence from the workforce, and lack of a Massachusetts teaching license, severely limited her ability to find employment as a teacher or guidance counsellor in Massachusetts or New Jersey.[10] The judge concluded that the wife had a need for general term alimony to "maintain the parties' upper-income lifestyle," and the husband had the ability to pay.[11] Specifically, the judge ordered the husband to pay to the wife weekly alimony of $ 7,325.11 (thirty-three percent of the difference in the husband's attributed income and the wife's stated gross income) until he reaches age sixty-seven, or either party dies, or the wife remarries. In addition, she ordered the husband to maintain a $ 1 million life insurance policy while the support obligation is in effect. The husband timely appealed.
On November 28, 2017, approximately seven weeks after the judgment issued and before the nisi period expired, the husband filed a complaint for modification seeking to "terminate" the income attributed to him and recalculate alimony based on his actual gross income derived from new employment. The wife filed a motion to dismiss the complaint, which was allowed by a different judge after a nonevidentiary hearing on February 2, 2018. On the same day, the husband's motion to stay proceedings to enforce paragraphs 6, 27, 30 and 34 the divorce judgment was denied. The husband timely appealed from both the judgment of dismissal and the order denying the stay. The husband then filed a motion for a stay of paragraph 34 of the divorce judgment with the single justice in this court. In partially allowing the husband's motion, the single justice modified paragraph 34, pending the outcome of this appeal, by reducing the husband's weekly alimony obligation to $ 3,508 based on his new employment, and noting that "this amount is still far short of the $ 1,180,259.70 in annual income attributed to him by the Probate and Family Court when alimony was determined."[12]
Discussion. a. Alimony. The trial judge did not abuse her discretion in awarding percentage-based alimony to the wife, or in failing to specify that the wife's cohabitation would terminate the husband's alimony obligation.
First, "[a] judge has broad discretion when awarding alimony under the [Alimony Reform Act]." Young v. Young, 478 Mass. 1, 5-6 (2017), quoting Zaleski v. Zaleski, 469 Mass. 230, 235 (2014). See G. L. c. 208, §§ 48 - 55. "In reviewing both the form and the amount of an award of alimony, we examine a judge's findings to determine whether the judge considered all the relevant factors under G. L. c. 208, § 53 (a ), and whether the judge relied on any irrelevant factors." Zaleski, supra at 235-236. See G. L. c. 208, § 53 (a ).[13] The amount of general term alimony, the form of alimony appropriate in this case, "should generally not exceed the recipient's need or [thirty] to [thirty-five] per cent of the difference between the parties' gross incomes established at the time of the order being issued." G. L. c. 208, § 53 (b ).
Here, it is clear from the record that the judge considered all of the statutory factors in determining that the wife was entitled to alimony. G. L. c. 208, § 53. The parties had a long-term marriage of 24.75 years and enjoyed a high standard of living. See G. L. c. 208, § 49 (c ). The judge found, among other things, that the wife was not underemployed as a part-time bartender (due to her twelve-year absence from the workforce), that she was the primary caretaker of the children throughout the marriage while the husband traveled extensively and partially lived out of Massachusetts, and that she maintained the marital properties and paid the parties' bills. The judge was not required to credit the testimony of the husband's expert regarding the wife's employability as a teacher or guidance counsellor in either Massachusetts (where she is not licensed) or New Jersey, when Dr. Cohen failed to factor in the wife's lengthy absence from that field of work. "The judge was ... entitled to credit all, part, or none of the[ ] [expert] testimony." Vedensky v. Vedensky, 86 Mass. App. Ct. 768, 774 (2014). "The judge was in a 'superior position to observe witnesses and weigh evidence.' "[14] Id., quoting Murphy v. Murphy, 82 Mass. App. Ct. 186, 193 (2012).
Next, the judge's failure to include the wife's cohabitation as a reason for termination of alimony was not fatal. The statute expressly permits alimony to "be suspended, reduced or terminated upon the cohabitation of the recipient spouse." G. L. c. 208, § 49 (d ). As the husband conceded at oral argument, there was no evidence presented at trial regarding the wife's cohabitation. Therefore, the husband is free in the future to seek a modification of his alimony obligation, which a judge will fairly and reasonably consider, so long as the husband can show that the wife has "maintained a common household" with another for "a continuous period of at least [three] months." G. L. c. 208, § 49 (d ).
b. Attribution of income. In attributing income to the husband, the judge relied on an earlier version of the guidelines, rather than the 2017 guidelines in effect at the time the divorce judgment issued.[15] Accordingly, we vacate the portion of the divorce judgment calculating the alimony award using income attributed to the husband.
"The issue of attributing income most commonly arises when a judge determines that a support provider is voluntarily earning less than he or she is capable of" through reasonable effort. Kelley v. Kelley, 64 Mass. App. Ct. 733, 741 (2005). See 2017 guidelines, I.E. Once this determination occurs, " '[a] judge is not limited to a party's actual earnings but may ... consider potential earning capacity' when attributing income." C.D.L. v. M.M.L., 72 Mass. App. Ct. 146, 152 (2008), quoting Heins v. Ledis, 422 Mass. 477, 485 (1996). However, "[t]he reasonable efforts inquiry is critical, and is generally the determining factor in whether to affirm the attribution of income to a party based on his prior earning capacity." Emery v. Sturtevant, 91 Mass. App. Ct. 502, 511 (2017). See P.F. v. Department of Revenue, 90 Mass. App. Ct. 707, 711 (2016) ("in Massachusetts, the relevant inquiry for attribution of income is not whether the payor's unemployment was foreseeable; it is whether the payor is presently able to obtain employment through reasonable efforts" [quotations omitted] ).
In this case, the judge determined that the husband had the ability to earn yearly income of $ 1,180,259.70, which is considerably in excess of the $ 150,000 annual salary he was earning at the time of trial. However, in making her "reasonable efforts inquiry" the judge improperly relied on the earlier version of the guidelines, which does not include certain factors that the judge was required to consider in October, 2017, in attributing income. 2017 guidelines, I.E.3. Specifically, it is unclear whether and to what extent the judge considered "the availability of employers willing to hire" the husband,[16] or "the relevant prevailing earnings level in the local community." Id. Accordingly, the determination to attribute income to the husband must be reconsidered by the judge, applying the version of the guidelines in effect at the time the divorce judgment issued -- the 2017 guidelines effective September 15, 2017.
c. Motion to dismiss complaint for modification. The motion judge did not err in dismissing the husband's complaint for modification. "To survive a rule 12(b)(6) motion to dismiss, a complaint must make 'factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief.' " Okoli v. Okoli (No. 2), 81 Mass. App. Ct. 381, 388 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). "Factual allegations must be enough to raise a right to relief above the speculative level ... [based] on the assumption that all the allegations in the complaint are true ...." Id., quoting Iannacchino, supra.
The husband claims that he continued his job search after the divorce judgment issued, and obtained higher paying employment (by $ 75,000 annually) than the position he held at the time of trial. Although the husband did increase his gross income since the time of trial, he failed in his complaint to sufficiently assert, above a speculative level, that he does not have the ability to earn a higher income with reasonable efforts, as the judge found. See 2017 guidelines, E.1, 2. The fact that the husband secured employment earning a higher annual salary than he was earning at the time of trial, but not a salary that the judge found the husband capable of earning, is not a material change in circumstances. See Doktor v. Doktor, 470 Mass. 547, 551-552 (2015). As a result, the judge did not abuse his discretion in allowing the wife's motion to dismiss. Okoli, 81 Mass. App. Ct. at 389.[17]
d. Motion to stay enforcement of divorce judgment. The motion judge did not abuse his discretion in denying the husband's motion to stay proceedings to enforce paragraphs 6, 27, 30, and 34 the divorce judgment. "A party seeking a [stay] must show that success is likely on the merits; irreparable harm will result from denial of the [stay]; and the risk of irreparable harm to the moving party outweighs any similar risk of harm to the opposing party." Doe v. Superintendent of Schs. of Weston, 461 Mass. 159, 164 (2011) (motion to stay treated same as motion for preliminary injunction). The motion judge was entitled to deny relief without explanation. See Commonwealth v. Cohen (No. 2), 456 Mass. 128, 132-133 (2010).
The judge to whom the husband presented his motion had the benefit of the trial judge's recently-issued judgment, which included detailed findings of fact and substantial reasons for the alimony order. However, the husband's motion failed to state with particularity the grounds for the alleged risk of harm to him that would result from a denial of the requested stay of the judgment, or how that risk outweighed any harm to the wife. Doe, 461 Mass. at 164. See Mass. R. Dom. Rel. P. 7 (b) (1). Hence, we discern no abuse of discretion in the denial of the requested stay. L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).
Conclusion. Based on the foregoing, the portion of the divorce judgment pertaining to the attribution of income to the husband in calculating the alimony award is vacated. We remand the case for the trial judge to reconsider (and in her discretion, to take evidence regarding) all of the factors required in attributing income to the husband when applying the 2017 guidelines. After determining on remand the amount of the alimony award, the judge shall also reconsider, if necessary, the amount of life insurance the husband is required to maintain to secure payment of his support obligations. The order of the single justice in 2018-J-159 shall remain in effect until the probate judge issues her decision after remand. The divorce judgment is otherwise affirmed.
The judgment dismissing the husband's complaint for modification and the order denying the husband's motion to stay are affirmed.[18]
So ordered.
vacated in part and remanded; affirmed in part.

After moving to Massachusetts, the wife no longer worked outside of the home; she was the primary caregiver to the young children while the husband was the sole wage earner. While the husband was working for Schnitzer, his office moved to Portland, Oregon. The husband worked and stayed at an apartment in Oregon during the week, and traveled home to Massachusetts most weekends. He also traveled as part of his work for Schnitzer, and would "be gone for long periods of time." In 2013, the wife reentered the workforce, working part time as a waitress and then a bartender, earning approximately $ 600 weekly.

While the husband lived in Canada during the week, he traveled home to Massachusetts on the weekends. The wife remained in Massachusetts with full responsibility for the caretaking of the two children and the parties' multiple properties.

Up to this point in the marriage, the parties "enjoyed a high standard of living." They traveled to Colorado, Costa Rica, and Hawaii, and the husband purchased expensive jewelry for the wife. The parties jointly owned three properties, two of which were valued at over $ 1 million.

Several months after losing his job with AIM, the husband went scuba diving in St. Martin, where he claimed he was looking for a new job. He also went to Hawaii with a female friend from his scuba club but claimed he was searching for employment while there. The judge did not find this testimony credible.

At trial, the husband called two vocational experts: Paul Blatchford, to support the husband's assertion that he made reasonable efforts in finding new employment, and Dr. Peter Cohen, to assess the wife's ability to find employment as a teacher. On cross-examination, Dr. Cohen agreed that failing to send out a resume to potential employers would not constitute a diligent or reasonable job search.

The judge credited the wife's testimony that during the husband's job search he turned down a different position with Sims in the New York office and turned down job offers in Chicago and Texas.

The judge found that efforts by the husband and his business partner to start Coastal, a new company in the recycling industry, "was an indication of their confidence in the market."

While the judge found credible Dr. Cohen's expert testimony pertaining to the availability of jobs for teachers and guidance counsellors, Dr. Cohen "did not review any data regarding applicants who had been out of the workforce for twelve years and testified that there was no way to factor this into his analysis."

The judge found that for purposes of alimony, the parties had been married for 24.75 years.

The husband did not appeal from the order of the single justice.

General Laws c. 208, § 53 (a ), provides:
"In determining the appropriate form of alimony and in setting the amount and duration of support, a court shall consider: the length of the marriage; age of the parties; health of the parties; income, employment and employability of both parties, including employability through reasonable diligence and additional training, if necessary; economic and non-economic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; lost economic opportunity as a result of the marriage; and such other factors as the court considers relevant and material."

Contrary to the husband's argument, there is nothing in the findings that indicates the judge considered the conduct of either party in setting the amount and duration of the alimony order.

The guidelines applicable in this case took effect on September 15, 2017, superseding any previous guidelines then in effect. See 2017 guidelines, preamble.

We acknowledge that the judge did credit the wife's testimony that the husband had received multiple job offers that he declined. In our view, however, the record does not reflect full consideration of this factor. Regardless, the judge's findings do not reflect consideration of the "relevant prevailing earnings level in the local community," which is also a mandatory consideration under the 2017 guidelines.

Our determination that the motion to dismiss was properly granted does not preclude the husband from filing a subsequent complaint for modification should he be able to demonstrate a material change in circumstances.

The husband's request for attorney's fees in connection with the appeal is denied.