NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-694                                       Appeals Court


JEFFREY M. KELSO  vs.  BARBARA KELSO.[1]


No. 13-P-694.

Middlesex.     January 7, 2014. - September 3, 2014.

Present:  Katzmann, Fecteau, & Milkey, JJ.


Res Judicata.  Divorce and Separation, Findings.  Practice,
     Civil, Motion to dismiss, Findings by judge.  Abuse of
     Process.  Libel and Slander.  Emotional Distress.



     Civil action commenced in the Superior Court Department on
June 18, 2012.

     A motion to dismiss was heard by Dennis J. Curran, J.


     Dana Alan Curhan for the plaintiff.
     David H. Locke for the defendant.


     KATZMANN, J.  This appeal poses the question of the

preclusive effect of a divorce judgment on a subsequent action

in tort pertaining to related conduct.  Following a trial, a

Probate and Family Court judge issued a judgment of divorce with

_____

     [1] The defendant is also known as Barbara Cappadona.

2

respect to the marriage of Barbara Kelso (Barbara) and Jeffrey

M. Kelso (Jeffrey) on the basis of the irretrievable breakdown

of the marriage.[2]  About a year later, Jeffrey filed an action in

the Superior Court against his former spouse seeking damages on

the basis of four tort claims:  abuse of process, defamation,

intentional infliction of emotional distress, and negligent

infliction of emotional distress.  A Superior Court judge

granted Barbara's motion to dismiss, and Jeffrey appeals.  We

reverse.

Background.[3]  On June 19, 2009, Barbara filed a complaint

for divorce in the Probate and Family Court, alleging cruel and

abusive treatment.  On the same day, a Probate and Family Court

judge granted Barbara's ex parte motion for a temporary order

requiring Jeffrey to vacate the marital home.  Jeffrey was

required to vacate the house that day.  The order also required

that Jeffrey have no contact with Justin and Angelina, the

children he shares with Barbara.  On June 20, Father's Day,

Justin was staying at the home of Barbara's sister, Gerri

_____

[2] As the parties have the same last name, we refer to them by their first names.

[3] We draw our summary of the background facts and proceedings from the plaintiff's complaint, as well as other documents in the record that were attached to responsive pleadings, assuming, as we must, that the facts alleged in the complaint are true.  Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008).

Abrahamian, and her husband, Fred Abrahamian.  Jeffrey picked up Justin, took him for a haircut and to a park, and returned him to the Abrahamians.[4]  Later that day he was arrested for violating the temporary order.

On June 26, 2009, Jeffrey filed a counterclaim for divorce and a motion to vacate the temporary order.  Following a hearing, the motion judge entered an order allowing Jeffrey to resume living in the marital home but requiring him to remain at least ten feet away from Barbara.  Jeffrey resumed residence in the house.  Three days later, in the early morning hours of June 29, Barbara called the police, alleging that Jeffrey violated the ten-foot order.  Also on June 29, Barbara sought a G. L. c. 209A abuse prevention order (209A order) in the Framingham District Court.  In that proceeding, she filed an affidavit stating that Jeffrey had forcibly entered her bedroom the previous night and assaulted her.  The District Court issued a 209A order that same day.  In addition, based on the alleged entry and assault, the Wayland police filed a criminal complaint charging Jeffrey with the violation of an abuse prevention order and assault and battery.

---

[4] Gerri Abrahamian told the police that on the evening of June 19, Barbara called her and informed her of Jeffrey's plan to pick up Justin the following day for his haircut.  Barbara did not inform her sister at that time of the no-contact order in place.

On July 28, 2009, the parties agreed to vacate the June 29 abuse prevention order issued by the Framingham District Court and to dismiss the related pending criminal matters. On August 28, 2009, a Probate and Family Court judge entered an order memorializing this agreement and vacating the 209A order.

During the divorce trial, which was held on January 26 and 27, 2011, Barbara made several serious accusations regarding Jeffrey's behavior towards her. First, she testified that Jeffrey had struck her during the marriage. Second, she testified that Jeffrey pushed her in the stomach when she was pregnant with Angelina. Third, she testified that Jeffrey formed his fingers into the shape of a gun and pointed them at her, suggesting that he was threatening to shoot her. Fourth, she testified that Jeffrey had threatened her that, if she called the police on him, it would be the last thing she ever did. Fifth, she testified that Jeffrey had threatened her that he was going to bash her head in. Jeffrey denied these allegations, and none of the witnesses at trial had observed Jeffrey behaving in an abusive manner towards Barbara. The Probate and Family Court judge who presided over the trial found that "Wife's testimony regarding alleged abusive conduct on the part of Husband was inconsistent to the point that it lacks credibility."

At trial, there was substantial testimony regarding the alleged incident of June 29, 2009. Barbara testified that Jeffrey forcibly entered her bedroom and assaulted her upon gaining entry.[5] She telephoned the police after Jeffrey, purportedly, left the room. Jeffrey testified that he did not enter Barbara's bedroom that night. There was testimony as well about the surveillance cameras in the house, including one installed in the hallway outside of Barbara's bedroom that recorded images from that hallway. Bruce Koenig, an expert in the field of video forensics, testified that he did not discover any problems with the authentication of the video recording (video) and that the format of the video made it all but impossible to alter. Koenig testified that the video was not consistent with Barbara's testimony that Jeffrey broke into her bedroom. The Probate and Family Court judge credited Jeffrey's version of the events that evening, as well as the authenticity of the video.

On August 10, 2011, the Probate and Family Court judge granted the petition for divorce on the grounds of irretrievable breakdown of the marriage. In support of the judgment, the judge issued an extensive written decision, including 406 findings of fact. As part of the divorce judgment, Barbara was

---

[5] Barbara always kept her bedroom locked.

ordered to reimburse Jeffrey for the cost of hiring Koenig, the forensic video expert. In addition, she was ordered to pay Jeffrey $10,000 from her share of the division of assets because of her uncooperative behavior at trial and because she forced Jeffrey to "defend himself against false allegations of abuse."

On June 18, 2012, Jeffrey filed the underlying Superior Court tort action against Barbara, alleging (1) abuse of process, (2) defamation, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. These claims were based on the actions during the divorce process described above. After a hearing, a Superior Court judge granted Barbara's motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), concluding that all four counts were barred by collateral estoppel[6] because of the prior divorce action. Jeffrey now appeals.[7]

---

[6] Below, we refer to collateral estoppel by its modern name, issue preclusion. See Heacock v. Heacock, 402 Mass. 21, 23 n.2 (1988) (Heacock).

[7] Judgment entered in accordance with the judge's order on February 1, 2013, and Jeffrey filed a timely notice of appeal therefrom on February 20, 2013. The record was assembled on April 17, 2013, and the appeal now before us was entered in this court on April 25, 2013. However, on May 15, 2013, the judge, apparently sua sponte, sought to vacate the prior judgment as "entered inadvertently." On that same day, the judge's memorandum of decision and order on the motion to dismiss was entered on the docket, as well as an amended judgment, again dismissing Jeffrey's complaint. The judge, however, lacked the authority to amend the judgment after the appeal had been

Discussion.[8]  "'Res judicata' is the generic term for various doctrines by which a judgment in one action has a binding effect in another.  It comprises 'claim preclusion' and 'issue preclusion.'"[9]  Heacock v. Heacock, 402 Mass. 21, 23 n.2 (1988) (Heacock).  Our analysis emerges from the framework that Heacock establishes with respect to claim and issue preclusion

---

entered in this court and we obtained jurisdiction.  See Springfield Redev. Authy. v. Garcia, 44 Mass. App. Ct. 432, 434-435 (1998).  Thus, only the judgment that was entered on February 1, 2013, is before this court.

Although the memorandum was entered on the docket on the same day as the amended judgment, the memorandum specifically states that it details the grounds for the decision at the time that the original judgment was entered (February 1, 2013). Thus, the memorandum is properly before us.  In that memorandum, the judge explicitly allows the motion to dismiss solely on the grounds raised by Barbara -- issue and claim preclusion. Although in footnotes the memorandum states basic principles of law suggesting alternative grounds for dismissal of the claims -- not raised below -- we decline to address them as they were not accompanied by any analysis and the decision does not rest on them.

[8] "We review the allowance of a motion to dismiss de novo." Galiastro v. Mortgage Electronic Registration Sys., 467 Mass. 160, 164 (2014).  "We accept as true the facts alleged in the plaintiff's complaint as well as any favorable inferences that reasonably can be drawn from them."  Ibid.

[9] "'Claim preclusion' is the modern term for the doctrines traditionally known as 'merger' and 'bar,' and prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies.  'Issue preclusion' is the modern term for the doctrine traditionally known as 'collateral estoppel,' and prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies."  Heacock, 402 Mass. at 23 n.2.

in tort actions that follow related divorce proceedings.  See id. at 23-25.  We conclude that neither claim preclusion nor issue preclusion bars the tort claims at issue here.

1.  Claim preclusion.  "The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action."  Id. at 23.  Claim preclusion only applies where both actions are based on the same claim.  Id. at 24.  Because "[a] tort action is not based on the same underlying claim as an action for divorce," it is not precluded by a prior divorce action.[10]  Ibid.  See Apostolicas Properties Corp. v. Richman, 28 Mass. App. Ct. 671, 676-677 (1990).

---

[10] "The purpose of a tort action is to redress a legal wrong in damages; that of a divorce action is to sever the marital relationship between the parties, and, where appropriate, to fix the parties' respective rights and obligations with regard to alimony and support, and to divide the marital estate.  Although a judge in awarding alimony and dividing marital property must consider, among other things, the conduct of the parties during the marriage, the purposes for which these awards are made do not include compensating a party in damages for injuries suffered.  The purpose of an award of alimony is to provide economic support to a dependent spouse; that of the division of marital property is to recognize and equitably recompense the parties' respective contributions to the marital partnership.  The plaintiff could not have recovered damages for the tort in the divorce action, as the Probate Court does not have jurisdiction to hear tort actions and award damages."  Heacock supra at 24 (citations omitted).

With respect to claim preclusion, the present case is on all fours with Heacock.  That the divorce action severed the parties' marriage does not prevent Jeffrey from bringing this tort action against Barbara.  See Heacock, supra at 24-25. Barbara argues that allowing this tort action to proceed would afford Jeffrey a double recovery because the Probate and Family Court judge considered the parties' actions during the pendency of the divorce and allocated funds in response.  In particular, she highlights the award of funds to Jeffrey, in the divorce judgment, to cover the cost of an expert witness that he called during the divorce proceeding and to cover certain legal fees because of her actions.  But the fact that the judge considered the parties' actions in awarding funds does not alter the claim preclusion analysis.[11]  See id. at 24 ("Although a judge in awarding alimony and dividing marital property must consider, among other things, the conduct of the parties during the marriage, the purposes for which these awards are made do not include compensating a party in damages for injuries suffered" [citation omitted]).

---

[11] We note that, even if Barbara is found liable in the subsequent proceedings, she cannot be required to pay twice to compensate for the same loss.  See Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 544 (2014), citing Blake v. Commissioner of Correction, 403 Mass. 764, 767 (1989).

Moreover, Heacock forecloses Barbara's policy argument that preclusion is required to ward off the ills of piecemeal litigation.  There, the court concluded that the general policy arguments for preclusion do not support the preclusion of a tort action by a prior related divorce action.  Heacock, 402 Mass. at 24-25 ("Maintenance of the tort claim will not subject the defendant and the courts to the type of piecemeal litigation that the doctrine of claim preclusion seeks to prevent").

2.  Issue preclusion.  Barbara argues that, even if Heacock makes claim preclusion unavailable in this situation, Jeffrey's tort claims are barred by issue preclusion.  We disagree.  We conclude that, where the judge in the prior action made findings that are favorable to Jeffrey and -- even if not wholly favorable -- those findings are not sufficiently adverse to Jeffrey such that they negate any element of the claims brought in the tort action, those claims can survive a motion to dismiss based on issue preclusion.

Issue preclusion prevents "relitigating an issue when four factors are present:  '(1) there was a final judgment on the merits in [a] prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue decided in the prior adjudication was essential to the

earlier judgment.'" Okoli v. Okoli, 81 Mass. App. Ct. 381, 385 (2012), quoting from Porio v. Department of Rev., 80 Mass. App. Ct. 57, 61 (2011). "To defend successfully on the ground of issue preclusion, the defendant must establish that the issue of fact sought to be foreclosed actually was litigated and determined in a prior action between the parties or their privies, and that the determination was essential to the decision in the prior action." Heacock, supra at 25, citing Cousineau v. Laramee, 388 Mass. 859, 863 n.4 (1983).

In Heacock, supra, issue preclusion did not apply because the judge who presided over the divorce action did not make any findings of fact. Here, by contrast, the Probate and Family Court judge made extensive findings of facts. Insofar as these findings were actually litigated and essential to the divorce judgment, neither Barbara nor Jeffrey may litigate them again.

In certain circumstances, factual findings made in a divorce action may preclude a subsequent tort action if those particular findings defeat the tort claim. See, e.g., Green v. Brookline, 53 Mass. App. Ct. 120, 127 (2001). This is not such a case. First, Barbara does not actually argue that any specific findings by the Probate and Family Court judge conclusively establish that she is not liable on any of the claims that Jeffrey now brings -- as she must do for the action to be dismissed because of issue preclusion. See Okoli v.

Okoli, supra at 388-389. Second, on the disputed issues plausibly pertaining to the four tort claims,[12] the judge's findings are favorable to Jeffrey. Notably, the Probate and Family Court judge credited Jeffrey's account of the night on which Barbara alleged that Jeffrey had entered her bedroom and assaulted her. In finding of fact no. 400, the judge stated, "The Court finds Wife's testimony in this regard to be deliberately evasive, and accordingly, not credible." Moreover,

---

[12] Abuse of process requires that "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-776 (1986) (citation omitted). Jeffrey alleges that Barbara filed the G. L. c. 209A petitions and took related actions in order to gain advantage in the divorce proceedings. "Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." Correllas v. Viveiros, 410 Mass. 314, 319 (1991). Jeffrey alleges that Barbara made defamatory statements to third parties during the divorce process. Intentional infliction of emotional distress requires showing "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of [the] conduct, . . . (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community, . . . (3) that the actions of the defendant were the cause of the plaintiff's distress, . . . and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable [person] could be expected to endure it." Okoli v. Okoli, supra at 387 n.8 (quotations and citation omitted). Negligent infliction of emotional distress requires: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances." Conley v. Romeri, 60 Mass. App. Ct. 799, 801 (2004). Jeffrey alleges that Barbara's conduct both intentionally and negligently caused him emotional distress.

with respect to the events that immediately followed the initial order requiring Jeffrey to vacate the family home, the judge stated, in finding of fact no. 193, "The Court finds Husband's testimony regarding the events on June 20, 2009 to be credible and Wife's testimony to be not credible."  Neither these nor the other findings in the Probate and Family Court judge's thorough decision conclusively resolve any of Jeffrey's four tort claims in Barbara's favor.[13]  Absent such findings, elevating the doctrine of issue preclusion, which precludes the relitigation of factual issues, to bar the claims at stake here would violate the underlying holding of Heacock limiting claim preclusion. See Heacock, 402 Mass. at 24-25.  While issue preclusion might be appropriate in a postdivorce tort action where the divorce judge had determined that a spouse did not engage in the wrongful act of which the spouse is accused in the tort case, it does not apply where a judge determines that a spouse had engaged in wrongful conduct but the court does not have jurisdiction to determine the legality of the conduct or the

---

[13] By contrast, it is Jeffrey who may benefit from the preclusive effects of the divorce judgment.  In the proceedings that follow this decision, Jeffrey may be able to use the judicial determinations offensively to preclude Barbara from relitigating questions of fact resolved at the divorce trial. See Evans v. Lorillard Tobacco Co., 465 Mass. 411, 466 (2013) (offensive issue preclusion can be deployed when not unfair to the defendant).  See also Aetna Cas. & Sur. Co. v. Niziolek, 395 Mass. 737, 745 (1985) (same).

damages suffered by the complaining spouse as a result.  Issue preclusion does not bar Jeffrey from bringing claims at issue here.

<u>Judgment entered February 1, 2013, reversed</u>.
