Curran, Dennis J., J.
This case is the logical result of a well-intended, but unfortunate, decision by a panel of the Massachusetts Appeals Court.
A husband and wife, long-since divorced (see Klee-man u. Maureen O'Donoghue, Middlesex Superior Probate and Family Court, MI-D1-10101-DR) are now embroiled in a complaint for modification pending before that same court on alleged changed circumstances. A regrettable by-product of that pending action is yet another lawsuit, this time filed in the Superior Court, in which the unhappy husband has filed a complaint in which he now alleges a miscellany of torts: intentional infliction of emotional distress, deceit, harassment, and breach of privacy.
This Court can only speculate the reasons behind such a legal stratagem, none of which are flattering, and all of which could have been avoided by the Appeals Court panel in Kelso v. Kelso, 86 Mass.App.Ct. 226 (2014). That panel granted a disgruntled divorce litigant the right to file yet another action in the Superior Court—also alleging tort claims—on issues that could well have and indeed, should have, been disposed of in the Probate Court.
A few words about the structure of the Courts is in order. The Probate Court is a specialty Court, uniquely designed to hear and process, inter alia, highly emotionally-charged marital issues, child care and support issues. G.L.c. 215, section 3; G.L.c. 208, section 6. The Kelso decision now requires that Superior Court judges handle the supposed “ancillary” issues that arise out of a divorce; that decision was—and is— wrong on many levels.[1]
The decision encourages judge-shopping; it continues the vitriol between former marital partners who, instead of going on with their lives, are now able to continue their emotional trauma by employing yet another judicial forum in a second Trial Court Department. This ought to be wrong as a matter of law; it is wrong as a matter of public policy; and it is wrong to provide yet another public platform for such parties to display their venom, especially where a perfectly adequate judicial forum already exists to handle such emotionally-charged and security-issue prone cases.
Yet an Appeals Court panel has decided in an academic, but wholly impractical, decision to enable divorced parties to continue their vitriol. There can be little doubt that the costs of such secondary litigation affects others—particularly innocent children who see family life savings set aside for college tuitions and life events such as weddings squandered by self-absorbed adults, blinded by emotion.
The collateral damage is not just limited to the children. The public, too, suffers. Cases that should be heard expeditiously in the Superior Court are subject to further delay; motion hearings are further backlogged;[2] and caseloads needlessly increase. This Court is already strained by its caseload and diminished support resources.
To demonstrate the folly of added disgruntled and/or losing Probate Court litigants to the Superior Court roster of cases, we need only examine the caseload of this one civil session, which presently has 614 other active cases.
A second by-product is to encourage judge-shopping. It is likely that in every divorce proceeding at least one, and possibly both, parties are unhappy with the outcome. Squandering limited judicial resources— both finite judge as well as precious courtroom time— to indulge the continuation of divorce acrimony—simply makes no sense.
Few divorce cases do not see the present “tort” claims that are alleged in this case: deceit is a staple of any divorce action; hard feelings, cast legally in this Court now as the “intentional infliction of emotional distress,” is another one; and harassment is hardly a virginal charge in the Probate Courts. No, these allegations are best heard in the Probate Court.
*386 A Complaint for Modification is presently pending before the Probate Court. It would waste limited judicial resources to service both cases simultaneously.
ORDER
Therefore, in the exercise of judicial economy, this Court, sua sponte, stays all discovery and any other actions in this Court until the resolution of the underlying Complaint for Modification pending in the Probate Court. When that complaint has been finally concluded—by trial, settlement, or otherwise—counsel shall promptly notify this court that this matter is ready to proceed. At that point, the Court encourages the counsel to confer with the parties to reconsider as to whether they wish to persist in this present course; if they do, this matter shall be entitled to an expedited discovery schedule, speedy trial date and resolution.

 A copy of the lower court decision in Kelso is attached and marked “A.” [Editor’s Note: The referenced decision, Kelso v. Kelso, d.n. MICV2012-02256F (Curran, Dennis J., J.) (May 14, 2013), is reported at 33 Mass. L. Rptr. 386.)

 For example, the average waiting time for a hearing on a dispositive motion in Suffolk County is reportedly about six months.