NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-536

JOHN TYLER

vs.

MELISSA TYLER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

John Tyler (John) appeals the Probate and Family Court's order of partial judgment and judgment of divorce nisi incorporating that partial judgment. He makes three arguments: (1) he was denied a trial; (2) the judge erred in his determination that Florida Law applied to the prenuptial agreement; and (3) res judicata prohibited the equal division of one of the marital assets, 154 Maverick LLC (the LLC). For the following reasons, we affirm.

Background. In 2004, Melissa Tyler[1] (Melissa) and John signed a prenuptial agreement in the State of Florida and were married in the Bahamas. The prenuptial agreement stated that

---

[1] The appellee changed her name on June 8, 2021. As is our practice, we use the parties' names as they appeared in the complaint.

the contract was to be governed by Florida law. After the two moved to Boston, the marriage deteriorated, and John filed a complaint for divorce in November of 2016.

The probate judge, at the request of the parties, bifurcated the case into two parts: first, the issue of the validity and enforceability of the prenuptial agreement; and second, the division of marital assets. After receiving submissions from the parties and holding a hearing on December 3, 2018, the court ruled that it would apply Florida law when determining the validity and enforceability of the prenuptial agreement. The court then, at the request of both parties, appointed a special master to "make findings regarding the validity and enforceability of the parties' prenuptial agreement under Florida law," preliminary to the special master's recommendations "on the divorce and counterclaim." After receiving evidence from the parties,[2] the special master made recommendations to the probate judge including that the prenuptial agreement was valid and that certain assets, including the LLC, be equally distributed between the parties in accordance with the parties' prenuptial agreement. On April 15, 2021, nunc pro tunc to March 6, 2020, the probate judge wholly

---

[2] Due to the COVID-19 pandemic, the parties, as the only witnesses in this case, presented their direct examination to the master by affidavits and exhibits and conducted cross-examination over Zoom.

adopted the findings of the special master.  On May 4, 2021, the Probate and Family Court issued a judgment of divorce nisi.

At the same time the parties were involved in the divorce proceedings in the Probate and Family Court, the parties were also undergoing litigation in Superior Court to determine ownership and management of the LLC and the property located at 154 Maverick Street in East Boston.[3]  On May 3, 2019, the Superior Court ruled that "John Tyler has the majority voting rights in and is the manager of 154 Maverick LLC."  The Superior Court also stated that "nothing in this Court's decision is meant to limit the Probate Court's authority to reach a different conclusion in equity when it divides the Tylers' marital assets upon finalization of their divorce."

Discussion.  1.  Due process.  John's first argument is that he was denied his due process rights and his right to a fair trial because he did not receive a trial.  He also argues that the court's adoption of the special master's recommendations was in direct contradiction of the bifurcation the court previously ordered.  His final contention is that, on this record, he believes it is clear the parties and the court intended to go to trial and adopting the special master's

_____

[3] The Probate and Family Court issued an order on December 11, 2018, stating it would defer to the Superior Court on the issues of ownership and management of the LLC.

3

recommendations without a trial was fundamentally unfair. To show that it was the court's intention that a trial occur after the special master's recommendations, John cites an email dated March 8, 2021, from a case manager of the Probate and Family Court, asking the parties for trial date availability.

We note at the outset that the court's order appointing the special master was clear that the special master would both have the power to make recommendations regarding the "validity and enforceability of the parties' prenuptial agreement under Florida law," and regarding the "divorce and counterclaim." John does not challenge the appropriateness of that order on appeal.

Here, where the order appointing the special master was clear, we see nothing on this record that shows John was deprived of his fundamental rights or that he was treated unfairly. John having requested "an equitable division of the parties' marital estate" as part of a divorce, and Melissa having counterclaimed for divorce and enforcement of the prenuptial agreement, John was on notice from the court's order that the special master would be making recommendations on the issues of the agreement's validity and enforceability and the division of property. John did not make any objection to the order granting the special master the authority to address the divorce and counterclaim until after the special master made his

4

recommendations to the probate court. John had the opportunity to present the special master with evidence regarding the divorce and counterclaim. He was able to present relevant evidence to the special master as shown by his affidavit and the fact that he submitted eighty-nine exhibits at the hearing before the special master. Only then did the special master make his recommendations to the court. Additionally, John made the court aware of the various areas in which he disagreed with the special master in his proposed amendments to the special master's draft report. Only after hearing from both parties did the trial judge adopt the special master's recommendations.

The case manager's email does not upset our conclusion that John was not deprived of his fundamental rights or treated unfairly. The email asking for trial date availability makes clear the court's understanding, and by extension the parties' understanding, that a trial may occur, not that it was inevitable or required.

We are also not persuaded that the special master's report of recommendations and the court's order adopting those recommendations inherently contradicted the order of bifurcation. It is clear from the special master's report that he first considered the validity of the prenuptial agreement and the relevant law before making recommendations regarding the division of assets. Bifurcation did not require separate

5

reports from the special master addressing the validity and enforceability of the prenuptial agreement and the divorce and counterclaim, as John's arguments seem to imply.

2.  Florida law.  John next argues that the court erred in applying Florida law to interpret the prenuptial agreement.

"Where the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy. . . and as long as the designated State has some substantial relation to the contract" (citation omitted). Steranko v. Inforex, Inc., 5 Mass. App. Ct. 253, 260 (1977). Although the prenuptial agreement clearly contains a paragraph that Florida law governs the agreement, John contends that Massachusetts law should apply to the interpretation of the agreement for public policy reasons.  His primary justification for this argument is that the parties resided in Massachusetts for most of their marriage.  John also argues that Massachusetts law should apply to the interpretation of the agreement because Florida does not have a substantial relation to the contract. Our review of whether the governing law provision of the agreement violates public policy is de novo.

First, the result of enforcing this agreement is not contrary to public policy.  John argues that Florida law does not provide the protection provided by Massachusetts law to

6

prevent the enforcement of an "agreement that essentially strips the contesting spouse of substantially all of [his or her] marital interests." Dematteo v. Dematteo, 436 Mass. 18, 37 (2002). This protection, however, only protects against the enforcement of an unconscionable contract. John points to no evidence or findings that under Massachusetts law this contract would be unconscionable where under Florida law it is not. Therefore, we are not persuaded that enforcement of this contract is against public policy. Additionally, we discern no other public policy concerns that would prohibit the application of Florida law in either the enforcement or the interpretation of this contract.

Second, the special master was presented with evidence connecting the parties to Florida at the time when they signed the agreement, including Melissa's affidavit, which detailed numerous occasions when the parties resided in Florida. The parties' history of residing in Florida at the time when they signed the agreement and their intent for the agreement to be governed by Florida laws is sufficient to show that Florida had a substantial relationship to the contract.

For those reasons, the court was correct in ordering the special master to apply Florida law when interpreting the prenuptial agreement.

7

3. Res judicata. John's final argument is that the Probate and Family Court was barred from ordering the equal division of the LLC under the principle of res judicata. Res judicata encompasses both the ideas of issue preclusion and claim preclusion. See Santos v. U.S. Bank Nat'l Ass'n, 89 Mass. App. Ct. 687, 692 (2016). After reviewing John's arguments, the only argument he has made in this appeal under the principle of res judicata that qualifies as an appellate argument is that of issue preclusion.[4] See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019). Essentially, John argues that the Probate and Family Court could not divide the LLC as a marital asset because the Superior Court had already ruled that "John Tyler has the majority voting rights in and is the manager of 154 Maverick LLC." We review this claim de novo.

Issue preclusion applies where (1) the earlier judgment is final and on the merits; (2) the current party was a party, or in privity with a party, in the previous case; (3) the past and present issues are identical; and (4) the issue was essential to the prior judgment. See Kelso v. Kelso, 86 Mass. App. Ct. 226, 231 (2014). John's argument fails because the issue before the Superior Court was determining who had ownership of the LLC

_____

[4] We note that had John raised a valid argument of claim preclusion he likely would not have been successful because the Superior Court action was not based on the same underlying claim as this action for divorce.

8

prior to the divorce, which is not identical to the issue before the Probate and Family Court, which was who will have ownership after the divorce.  In cases like this, the Probate and Family Court has the power to "assign to either husband or wife all or any part of the estate of the other."  G. L. c. 208, § 34.  In order to make such allocations, the Probate and Family Court need not only decide ownership rights prior to the action, but also ownership rights after the action.  The Superior Court in this case assumed the role of deciding whether John was the owner of the LLC prior to a final judgement in the divorce action, not how the marital assets, including the LLC, should be divided.  For that reason, issue preclusion does not apply.

Conclusion.  For all of the above reasons, we affirm the Probate and Family Court's order of partial judgment in this action, and the judgment of divorce nisi incorporating that partial judgment.

Judgment affirmed.

By the Court (Meade,
  Englander & Walsh, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  May 23, 2023.

---

[5] The panelists are listed in order of seniority.