NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1141

N.S.

vs.

A.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, A.S., appeals from a District Court judge's entry in January 2022 of a permanent abuse prevention order under G. L. c. 209A at the request of A.S.'s former wife, N.S. A.S. argues that the court lacked jurisdiction, that the order deprived him without due process of his liberty interest in his relationship with the parties' child, and that N.S. failed to show a need for a permanent order. Reviewing "for an abuse of discretion or other error of law," E.C.O. v. Compton, 464 Mass. 558, 562 (2013), we affirm the permanent order.

Background. In A.S.'s prior appeal, a panel of this court (1) dismissed as moot A.S.'s challenge to the ex parte c. 209A order that issued on July 3, 2020; (2) affirmed the subsequent order of July 7, 2020 (July 7 order) extending the ex parte order for six months after an evidentiary hearing; (3) affirmed

orders entered in August 2020 denying A.S.'s motion to terminate the c. 209A order and motion to reconsider that denial; and (4) affirmed an order entered in October 2020 denying A.S.'s motion to vacate. N.S. v. A.S., 100 Mass. App. Ct. 1128 (2022).

The July 7 order affirmed in the prior appeal was based on N.S.'s testimony about events occurring a few days earlier, on July 3, 2020. She testified that during an argument in the presence of the parties' then three year old child, A.S. bumped N.S.'s head with his head, grabbed the cell phone on which she had just recorded part of their interaction, and smashed it with a meat tenderizer. N.S. further testified that A.S. had grabbed her arm during an argument a year earlier and given her bruises, had her grabbed her forearm again during an argument a few months earlier, and recently spat in her face when she told him she had hired an attorney in connection with the divorce action he commenced against her. N.S. testified that she was in fear both of harm to herself and of "harm and trauma" to the child from having been exposed to A.S.'s conduct. On this basis, a judge[1] issued a c. 209A order that included "no contact" and "stay away" provisions and awarded custody of the child to N.S.[2]

---

[1] The judge who issued the July 7 order was not the same judge who issued the permanent order in January 2022.

[2] A temporary custody order was also entered in the divorce action. A.S.'s appeal from the subsequent judgment of divorce nisi is the subject of a separate decision issued today, A.S. v.

A.S. was also charged with domestic assault and battery and other offenses as a result of the incident.[3]

In January 2021, while the appeal from the July 7 order was pending in this court, a different District Court judge extended the c. 209A order for an additional year after a hearing attended by both parties and their counsel.[4] In November 2021, in the divorce action, a Probate and Family Court judge entered a judgment of divorce nisi that awarded N.S. physical and legal custody of the child but allowed A.S. to have supervised parenting time, as well as limited electronic contact with N.S. about matters concerning the child. That judge then modified the c. 209A order to include the same provisions, as authorized by G. L. c. 209A, § 3. In January 2022, after an in-person hearing attended by N.S., her counsel, and A.S. (representing

---

N.S., Mass. App. Ct., No. 22-P-434, and we take judicial notice of the record in that appeal. See Jarosz v. Palmer, 436 Mass. 526, 530 (2002) (court may take judicial notice of records in related case).

[3] We take judicial notice that A.S. was convicted of malicious destruction of property and that his appeal from that conviction is pending in this court.

[4] The judge who issued the January 2021 order was also not the judge who issued the permanent order in January 2022. The January 2021 order is not before us. Although A.S. has included in his record appendix what appears to be a notice of appeal from that order, dated January 15, 2021, no such notice was ever docketed. We nevertheless address A.S.'s arguments regarding the January 2021 order to the extent that the issuance of that order is relevant to the current appeal.

himself), another District Court judge made the c. 209A order permanent.  A.S. now appeals.

Discussion.[5]  1.  Jurisdiction.  A.S. asserts that, for three separate reasons, the District Court lacked jurisdiction to issue any c. 209A order against him.  We are unpersuaded.

First, A.S. argues that, after the initial ex parte order was issued by an on-call judge from another District Court, acting under G. L. c. 209A, § 5, the clerk-magistrate of the court to which the on-call judge was assigned failed to certify the order to the court having venue and jurisdiction over the matter -- here, the District Court in the parties' town.  A.S. claims that such certification was necessary under G. L. c. 209A, § 5, in order to confer jurisdiction and commence proceedings under c. 209A, and thus that this action was never properly commenced.

A.S. cites no authority, however, for his claim that such a certification is "jurisdictional."  Nor is it the only way of commencing a c. 209A action.  Such an action may also be commenced by filing a complaint.  See G. L. c. 209A, § 3.  Although A.S. claims that N.S. never filed a complaint, the

_____

[5] We decline to address numerous issues raised in the "Statement of Facts" section of A.S.'s brief that either were resolved by or could have been raised in the prior appeal.  Apart from the assertedly jurisdictional issues related to the commencement of this action, we address only those issues that arose after the orders affirmed in the prior appeal.

4

docket here reflects that a complaint was filed on July 6, 2020.[6] A.S. has included a partial, unsigned copy of the complaint in his record appendix,[7] as well as a c. 209A affidavit signed by N.S. on July 3, 2020, which was witnessed by a police officer and recounted the same events N.S. testified to at the July 7 hearing.  Even if the complaint that was filed was unsigned, it was not a nullity.  Rather, our rules provide merely that an unsigned pleading "may be stricken" (emphasis added).  Mass. R. Civ. P. 11 (a) (1), as appearing in 488 Mass. 1403 (2021).  This stands in sharp contrast to the Federal rule, which states that "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention" (emphasis added).  Fed. R. Civ. P. 11(a).  We

---

[6] If A.S. wished to controvert the docket entry showing that a complaint was filed, the burden was on A.S. to seek correction of the record under Mass. R. A. P. 8 (e) (2), as appearing in 481 Mass. 1611 (2019).  He did not do so, and we treat the docket entries transmitted to us as accurate.  See Mass. R. A. P. 9 (a) (1), as appearing in 481 Mass. 1615 (2019) ("Upon the filing of a notice of appeal, the clerk of the lower court shall promptly review the file and ensure the accuracy of the docket entries").  See also Adoption of Ursa, 103 Mass. App. Ct. 558, 565 (2023) (uncontroverted docket entries conclusive).

[7] Whether this is an accurate copy of the original in the District Court clerk's possession cannot be determined based on the contents of the record appendix filed by A.S.  And it is "a fundamental and long-standing rule of appellate civil practice" that the appellant has an obligation "to include in the appendix those parts of the [record that] are essential for review of the issues raised on appeal."  Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 372-373 (1991), S.C., 411 Mass. 807 (1992).

conclude that this action was properly commenced by the filing of the complaint.[8]  We therefore need not reach A.S.'s various other arguments premised on his claim that no valid complaint was filed.

A.S.'s second basis for claiming that the court lacked jurisdiction is that N.S. did not file the affidavit that A.S. asserts is required in child custody proceedings by G. L. c. 209B, § 3 (a).  "Chapter 209B provides guidelines to determine when a Massachusetts court may exercise jurisdiction over an initial child custody proceeding."  Custody of Brandon, 407 Mass. 1, 5 (1990).  It has no application to "[a] G. L. c. 209A order entered in a court other than the Probate and Family Court," because such orders "may not decide custody." Smith v. Joyce, 421 Mass. 520, 523 (1995).  Even if we assume for purposes of argument (1) that the affidavit requirement applies to c. 209A proceedings in which child custody may be at issue and (2) that the affidavit and complaint here, taken together, did not substantially provide the information required by G. L. c. 209B, § 3 (a), A.S. nevertheless cites no authority for his claim that the filing of such an affidavit is

_____

[8] We further note that A.S. has not identified any prejudice to him from any defect in the filing of the complaint.  The transcript leaves no doubt that, at least as of July 7, 2020, he was fully aware of the terms of the order and of N.S.'s statements that led to its issuance.

6

jurisdictional.  The jurisdictional requirements of c. 209B appear in a different section, G. L. c. 209B, § 2, which primarily concerns resolution of questions regarding which State's courts may make child custody determinations.  The section requiring the affidavit provides only that "[t]he court may impose sanctions against any party who fails to act in conformity with this section without leave of court granted for good cause shown" (emphasis added).  G. L. c. 209B, § 3 (f).  We conclude that any claimed defect in the affidavit filed by N.S. did not deprive the District Court of jurisdiction.

A.S.'s third argument is that the District Court lacked jurisdiction to extend the c. 209A order during the time the prior appeal was pending in this court.  That is not the law.  Although a judge generally "lack[s] the authority to amend the judgment after the appeal had been entered in this court and we obtained jurisdiction," Kelso v. Kelso, 86 Mass. App. Ct. 226, 229 n.7 (2014), "this rule does not apply in the sui generis context of c. 209A abuse prevention orders," Quinn v. Gjoni, 89 Mass. App. Ct. 408, 411 (2016).[9]

---

[9] Although a judge suggested in an October 2020 ruling that he could not address a particular motion because the case was on appeal, he appears to have been mistaken.  In any event, the judge also denied the motion in question, and it is that ruling that was affirmed by the prior panel.

7

2. Due process. A.S. next asserts that he was deprived without due process of his liberty interest in his relationship with his child. Again, we are unpersuaded.[10] We address A.S.'s procedural claims in order, deferring until later our discussion of the evidence supporting the order.[11]

First, A.S. complains that in January 2021, during the COVID-19 pandemic, he was not afforded an in-person hearing, but only a Zoom hearing, on whether the c. 209A order should be extended by one year.[12] This was not a per se due process

---

[10] Because it could have been raised in the prior appeal, we decline to address A.S.'s claim that he was barred from speaking in his own defense at a July 6, 2020 hearing on the c. 209A order. Notably, however, that hearing was merely continued until the next day so that A.S.'s newly-retained counsel could participate. The next day, with counsel present by telephone, A.S. testified. A.S. also complains that on July 6, 2020, without proper notice, he was arraigned on criminal charges arising out of the incident with N.S. and then was improperly subjected to conditions of release that mirrored the c. 209A order. Those issues could have been raised in the criminal case, the appeal from which is pending. They are not before us here.

[11] Pursuant to G. L. c. 209A, § 3, the custody-related provisions of the c. 209A order are controlled by the divorce judgment issued by the Probate and Family Court, which is the subject of A.S.'s other appeal decided today. See note 2, supra. Thus, since November 2021, the c. 209A order has provided among other things that, although N.S. has custody, A.S. has the right to biweekly supervised visitation with the child. Insofar as the c. 209A order merely conforms to the divorce judgment, A.S.'s challenge to those portions of the order is effectively governed by the affirmance of that judgment.

[12] A.S. also complains that hearings in July, August, and October 2020 were held remotely rather than in person. The orders issued as a result of those hearings were affirmed in the prior appeal; further nonjurisdictional challenges to those orders are

8

violation, see Adoption of Patty, 489 Mass. 630, 642 (2022), nor has A.S. shown that the hearing as conducted violated due process.  The hearing transcript contains no objection on his part to a Zoom hearing.  The transcript further reflects that A.S. was represented by counsel, who was offered and declined an opportunity to cross-examine N.S. on her reasons for seeking an extension of the c. 209A order, as set forth both in her affidavit dated December 28, 2020,[13] and as proffered by her counsel at the hearing.  A.S.'s counsel was also offered an opportunity to call A.S. as a witness, but counsel declined and instead chose to give a detailed proffer of A.S.'s testimony.

Second, A.S. claims that counsel for N.S. misrepresented material facts at various hearings.  We have carefully examined those portions of the record cited by A.S. and conclude that, to the extent any objections to such representations were preserved

---

not now before us.  A.S. further asserts that various docket entries erroneously indicate that hearings occurred in person when they were actually held remotely, and that the judge who entered the permanent c. 209A order erroneously relied on such a docket entry to conclude that A.S. had "had [his] day in court multiple times."  We have reviewed the docket entries and see nothing in them that could have misled the judge as to the nature of the prior hearings, nor do we read the transcript of his comments to reflect any misunderstanding on his part.

[13] The affidavit is repeatedly mentioned in the hearing transcript, which makes clear that the judge presiding at the January 2021 hearing and both parties had copies of the affidavit, but A.S. has not included it in his record appendix here.  We have taken judicial notice of the affidavit as appearing in the record appendix filed by A.S. in the prior appeal.

for appeal, A.S. has not shown that any of them have merit. A.S. also claims that at the January 2022 hearing resulting in the permanent order, counsel for N.S. was improperly permitted to "testify" without having been sworn as a witness. It was, however, within the judge's discretion to entertain representations of counsel, as an officer of the court, just as a judge at the January 2021 hearing did for A.S.'s own counsel. Cf. Frizado v. Frizado, 420 Mass. 592, 597-598 (1995) (rules of evidence need not be followed during c. 209A proceedings); Mass. G. Evid. § 1106 (2023) (similar). After reviewing the transcript of the January 2022 hearing, we are confident that the judge was able to give those representations appropriate weight. The transcript also makes clear that the judge afforded A.S. a fair opportunity to respond, which A.S. squandered by repeatedly digressing into procedural matters irrelevant to whether there was a need to extend the order.

Third, A.S. claims that the judge denied him the right to cross-examine witnesses at the January 2022 hearing. We reject this claim. A.S. alluded to cross-examination only once, and he never directly asked to cross-examine N.S.

Fourth, A.S. claims that the judge who entered the permanent order failed to remain neutral and presumed A.S. to be guilty of assault. To the extent that claim is properly before

10

us, we reject it based on our review of the transcript.[14] Notably, A.S. never requested that the judge recuse himself, let alone made such a request in a timely fashion. See Demoulas v. Demoulas Super Mkts., Inc., 428 Mass. 543, 547-549 (1998), S.C., 432 Mass. 43 (2000); Adoption of Norbert, 83 Mass. App. Ct. 542, 545 (2013). Cf. Matter of Moore, 449 Mass. 1009, 1010 n.1 (2007) (summarily rejecting recusal claim raised for first time on appeal); Commonwealth v. Armand, 411 Mass. 167, 175-176 (1991) (same).

Fifth and finally, although A.S. does not clearly frame the argument in due process terms, he suggests without citation to supporting authority that no c. 209A order should have entered so long as the conditions of his pretrial release in the criminal case required him to have no contact with N.S. or the child. The court has held, however, that "conditions of pretrial release, even if they encompass the same conditions as an abuse prevention order, are no substitute for an abuse prevention order." Vera V. v. Seymour S., 98 Mass. App. Ct. 315, 319 (2020).

---

[14] For example, A.S. claims that the judge showed he had prejudged the matter when he told A.S. that, the issue of custody by that time having been resolved in the divorce case, the subject of the extension hearing was "abuse prevention . . . whether or not in fact your former wife is in danger or is in fear of imminent serious physical harm from you." This statement was clearly intended simply to refocus A.S. onto the subject of the hearing.

11

3. Basis for permanent order. A.S. asserts that the evidence failed to support the issuance of the permanent order. We disagree. To begin with, the evidence included N.S.'s original affidavit and testimony from July 2020, recounted above, in which she stated that A.S. had physically assaulted her in front of the child and that she was concerned about harm and trauma to the child.

It also included N.S.'s subsequent affidavit in support of the January 2021 extension, in which N.S. stated that A.S. "continue[d] to be very afraid that [A.S.] could cause [her] physical harm." She described his controlling and harassing behavior, which included attempts to have a criminal complaint issued against her and to have her and the child evicted from their home. She stated that A.S. "seeme[ed] to be growing more aggressive" and that she was "extremely fearful that if the [o]rder is not extended, he may immediately come to [her] home, frighten [her] and [her] child, and cause harm to [her]." She therefore asked that the order be extended for two years. A.S.'s counsel did not oppose extending the order as it pertained to N.S. The judge who presided over that hearing extended it for one year.[15]

---

[15] In light of N.S.'s affidavit, and of A.S.'s counsel's decision not to cross-examine N.S., we reject A.S.'s attack on the January 2021 extension order as having been issued based not on

12

The evidence also included N.S.'s testimony from the January 2022 hearing at which the order was made permanent. In response to questions from the judge,[16] N.S. stated that, based on A.S.'s past conduct, she remained afraid that he would cause her "imminent serious physical harm," and that she was the complaining witness in an ongoing criminal case against A.S.[17] Through counsel she asked that the order be made permanent.

The judge not only expressly credited N.S.'s testimony about her fear, but also stated, "I believe that she is in fact in danger of imminent serious physical harm." Further, the judge was entitled to find that N.S.'s fear was reasonable, based on A.S.'s erratic and disrespectful demeanor at the hearing. "[T]he parties' demeanor in court" has repeatedly been

_____

evidence but merely on a presumption that it was still needed. We also reject A.S.'s argument that the order insofar as it pertained to the child lacked the requisite "independent support." Smith, 421 Mass. at 523. N.S.'s testimony regarding her fear of trauma to the child provided such support. The order to stay away from the child was not, as A.S. claims, issued "simply because it seem[ed] to be a good idea." Id. at 523 n.1.

[16] Particularly in the charged atmosphere of the hearing, and contrary to A.S.'s suggestion, the judge did not abuse his discretion in asking N.S. this series of short, focused questions to obtain critical information from her.

[17] In light of this testimony, we reject A.S.'s claim that the only judge to have heard testimony from N.S. was the judge who presided at the July 7, 2020 hearing. To the extent that A.S. complains that that same judge did not preside over subsequent hearings, which instead were conducted by different judges of the District Court, A.S. cites no authority suggesting that the common practice of judicial rotation violated any provision of law.

13

held to be a relevant factor that a judge should consider in deciding whether to extend a c. 209A order. Iamele v. Asselin, 444 Mass. 734, 740 (2005). See S.V. v. R.V., 94 Mass. App. Ct. 811, 813 (2019); Vittone v. Clairmont, 64 Mass. App. Ct. 479, 487 (2005); Pike v. Maguire, 47 Mass. App. Ct. 929, 929 (1999). In Pike, supra at 930, in affirming a permanent extension of a c. 209A order, the court stated that "[c]onfirmation of the reasonableness of the plaintiff's apprehension of the defendant could be drawn from . . . the defendant's emotionally charged statements at the [extension] hearing, . . . statements which could well have indicated to the judge a basis for concluding that the defendant's anger against the plaintiff might reignite" (quotation and citations omitted). The same is true here; the judge repeatedly commented that A.S.'s unstable and erratic behavior over the course of the case and at the hearing caused the judge to find that N.S. was both reasonably in fear and in actual danger. The judge stated, "I am very concerned for your former wife and for her safety, I truly am."

We reject A.S.'s claim that the judge shifted the burden to him to prove that a permanent order was not necessary. The judge's statement to A.S. that he wanted "to discuss why [the c. 209A order] should not be extended either for a year or . . . forever" was plainly intended merely to direct A.S.'s attention

14

away from the irrelevant matters A.S. was addressing and back onto the subject of the hearing.

We acknowledge that A.S. vigorously contested N.S.'s version of events, challenged the existence and reasonableness of her fear, and offered his own evidence in support of his position.  But the judge was free to disbelieve A.S.  "We accord the credibility determinations of the judge who 'heard the testimony of the parties . . . [and] observed their demeanor' . . . the utmost deference."  Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006), quoting Pike, 47 Mass. App. Ct. at 929.  See Prenaveau v. Prenaveau, 81 Mass. App. Ct. 479, 496 (2012), quoting Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995) ("In a bench trial credibility is 'quintessentially the domain of the trial judge [so that his] assessment is close to immune from reversal on appeal except on the most compelling of showings'").

Conclusion.  The permanent c. 209A order entered on January 18, 2022, is affirmed.

So ordered.

By the Court (Meade,
  Massing & Sacks, JJ.[18]),

Assistant Clerk

Entered: February 22, 2024.

---

[18] The panelists are listed in order of seniority.